No. 45,956

Oscar R. Hodges, *Appellant,* v. Dennis D. Lister, a minor, through his next friend and natural guardian, Elbert Lister, *Appellee.*

(485 P. 2d 165)

Opinion filed May 15, 1971.

*Thomas H. Graber,* of Hill, Mason, Graber and Nicklin, of Wichita, argued the cause, and *Theo. H. Hill,* of the same firm, was with him on the brief for the appellant.

*Kenneth H. Hiebsch,* of Gamelson, Hiebsch, Robbins and Tinker, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an appeal in a damage action for personal injuries arising from an automobile collision at an open, uncontrolled city intersection.

The trial court sustained a motion to dismiss and/or a motion for a directed verdict, before the plaintiff had presented all of his evidence on his case in chief, on the ground that the plaintiff by his admissions had convicted himself of contributory negligence which was a proximate cause of the collision.

The controlling question on appeal is whether the trial court erred in terminating the plaintiff's case by declaring "the plaintiff's evidence rested."

The case involves a collision of two automobiles at an open city intersection which has no traffic control signs or signals. The litigants are the two drivers. Oscar R. Hodges (plaintiff-appellant) filed his petition against Dennis D. Lister, a minor, through his next friend and natural guardian, Elbert Lister (defendant-appellee), seeking damages for personal injury and property damages. At the pretrial conference the issues of fact to be determined resolved into the usual issue of negligence and contributory negligence which may have been the proximate cause of the collision and the damages and injuries sustained by the plaintiff.

When the case was called for trial, a jury was impaneled and the plaintiff commenced the presentation of his evidence. The plaintiff took the stand on his own behalf and testified under oath that on June 3, 1968, he was involved in an accident with Dennis Lister at the intersection of 22nd and Park Place in Wichita, Kansas. The plaintiff immediately prior to the accident was traveling west on 22nd Street at approximately 20 m. p. h., but as he approached the intersection of 22nd and Park Place he reduced his speed to around 15 m. p. h. When approximately 14 feet east of the intersection he looked to the north and south *and observed no traffic approaching the intersection.* Just as he entered the intersection the plaintiff again looked to the north and to the south *and could see no oncoming traffic.* When he looked the first time the plaintiff could see approximately one-fourth of a block to the north, and the second time he looked he could see approximately one-half of a block to the north.

A building at the northeast corner of the intersection located next to the sidewalk obstructed the view on the plaintiff's approach to the intersection. There also was a tree in front of the obstructing building on Park Place between the sidewalk and the curb.

The plaintiff further testified he was three quarters of the way through the intersection when his car was struck on the right side by an automobile driven by Dennis Lister. When the plaintiff concluded his testimony and was excused, the trial court asked:

"Does the plaintiff have other evidence concerning liability except that which will be proffered?"

Thereupon an affirmative response from the plaintiff's attorney was met with a direction by the trial judge that he "Call the witness concerning liability first."

Bobby Watson, an officer of the Wichita police department, was

called and testified under oath that he was a traffic investigator. After giving testimony concerning his qualifications, Watson said he arrived at the scene of the accident on June 3, 1968, shortly after it occurred. At that time the Renault driven by the plaintiff was across the center line of Park Place and south of the intersection of 22nd Street. The other car, an Oldsmobile, driven by the defendant, was situated over the southwest curbline at the intersection. The plaintiff was found lying 40 feet south of the south curbline of Park Place. He was unconscious at the time, and the officer did not know whether the plaintiff would live because of the extensive injuries inflicted to his head. The officer established the point of impact 8 feet south of the north curbline of 22nd Street and 11 feet east of the west curbline of Park Place. From this point the defendant's car was deflected to the south, southwest, jumped the curb, which is 6 or 8 inches tall, and struck a retaining wall 13 or 14 inches high around a residence, and came to rest pointing in a southwesterly direction. The plaintiff's car came to rest with the left rear of the car 12 feet south of the curbline of 22nd Street. It was knocked in a curving manner covering 36 feet from the point of impact. The plaintiff's car appeared to have been airborne from the point of impact to its resting place. It ended up facing east, with the plaintiff lying a little less than 30 feet from his automobile.

The measurements taken by the officer disclose the skid marks left by the defendant's automobile. The right front wheel skidded 52 feet before impact and another 30 feet after impact. The right rear wheel skidded 36 feet to the point of impact and 28 feet after impact. The left front wheel skidded 28 feet to the point of impact, became airborne 14 feet and then skidded 10 more feet. No skid marks for the left rear wheel could be detected.

Counsel for the plaintiff proceeded to qualify the officer to testify concerning traffic accident reconstructions as determined from the physical facts available, but the trial court interrupted excusing the jury from the courtroom. The record then discloses:

"The Court: May we inquire, please, Mr. Pinkerton whether this witness— the remainder of this witness' testimony is intended to reflect on the negligence of the defendant?

"Mr. Pinkerton: Yes, it is.

"The Court: And will the witness produce any evidence concerning a defense to possible contributory negligence on the part of the defendant?

"Mr. Pinkerton: Yes.

"The Court: And what will that be?

"Mr. Pinkerton: It will show the speed of the defendant's vehicle.

"The Court: And what will the Officer's estimation of the speed be? Can you tell us officer?

"Officer Watson: Yes, about forty miles an hour.

"The Court: Mr. Lister's car—the defendant?

"Officer Watson: Yes.

"The Court: Then, does the plaintiff have other evidence concerning liability in the case?

"Mr. Pinkerton: This is the end of the liability evidence. This will be the last witness.

"The Court: Then, the plaintiff would rest on the liability question except for the proffer which has been discussed in Chambers, is that correct?

"Mr. Pinkerton: Yes.

"The Court: Would you make that proffer now?"

Counsel for the plaintiff then proffered the further testimony of Officer Watson and Jack Clark, the clerk of the traffic court of the city of Wichita. The proffer was summary in nature disclosing that Watson would testify the defendant's car was speeding 40 to 50 m. p. h. at the time of the accident; that judging from the speed of the defendant's automobile it was a minimum of 208 feet from the intersection, when the defendant first began to stop; and that the location of the defendant's car at the time the plaintiff entered the intersection was back a sufficient distance to the north so as not to constitute a hazard had the defendant been obeying the speed limit. The proffer of Clark's testimony was that he had control of the records of the traffic court of the city of Wichita, which would show a signed statement wherein the defendant admitted he failed to reduce his speed to avoid an accident.

The trial court interrupted and the record discloses the following:

"The Court: Well, since this proffered evidence pertains only to the possible negligence of the defendant we will take the objection under advisement. Now, that the plaintiff has rested on the question of liability  .   .   .

"Mr. Pinkerton: I have not. I have Officer Watson's testimony to give yet.

"The Court: The question that was asked at first is whether the plaintiff has any other evidence to offer concerning the question of defense on possible contributory negligence.

"Mr. Pinkerton: We will show that, too, your Honor."

Counsel for the plaintiff then further attempted to show what Officer Watson's testimony would be relative to the probable distance of the defendant's vehicle from the intersection at the time the plaintiff entered the intersection.

Further presentation of the plaintiff's evidence was terminated by the trial court in the following manner:

"The Court: The court declares the plaintiff's evidence closed on the point of contributory negligence, and considering what the Officer would testify to and may testify to when the jury returns. The question of liability should now be argued as a matter of law.

"Mr. Pinkerton: I don't understand your first ruling.

"The Court: Well, the record has been made on it. Would the defendant proceed with the motion concerning the question of law to be considered?

"Mr. Pinkerton: I do have the right to understand what you said. I would like to have what you said. I didn't hear it.

"The Court: Would you read it back.

"(The Court Reporter read the Court's statement back)

"Mr. Pinkerton: I object to your Honor's ruling and let the record so show.

"The Court: We will ask again, Mr. Pinkerton—maybe this procedure is unusual from your experience but what other evidence would the plaintiff present in this case and will the plaintiff present in this case to reflect upon the defense of contributory negligence; what evidence to rebut the charge of contributory negligence that has been made against the plaintiff? What other evidence besides that which has been proffered will the plaintiff produce?

"Mr. Pinkerton: Like I say—the fact he was back a distance and the speed he was going—the fact my client undoubtedly entered the intersection first; the fact the law is such that states he can assume others will obey the law. We feel it is a question for the jury to determine whether or not my client was contributorily negligent.

"The Court: Well, the statement made by the Court was 'this then places the case in such a posture that the defendant's motion concerning contributory negligence can be argued now as a matter of law.'

"Mr. Pinkerton: I have heard no motion.

"The Court: The Court is entertaining such motion. Would you proceed, please

"Mr. Hiebsch: May it please the court. On the ruling of the Court that the effect of the proffered evidence here would not be received as being proper and competent evidence, or *whatever the court's ruling here concludes as a matter of offering evidence on the question of liability*, (emphasis supplied) and in effect constitutes the conclusion of the plaintiff's case on the question of liability, then comes now the defendant and moves the court to dismiss the action and/or motion for a directed verdict on the basis that the evidence conclusively shows by the admission of the plaintiff himself, the plaintiff's evidence, that the plaintiff was guilty of contributory negligence as a matter of law.

"The Court: I think we should say to Mr. Pinkerton this motion is now being argued assuming the evidence which has been proffered would be offered and would be competent; that is, the evidence of the other witness— the Clerk of the Police Court who is not here, plus the remaining evidence of the officer.

"The Court: Well, I think it should have been said that the Court believes *from having examined the depositions and having heard the case so far*, (emphasis supplied) it is likely a directed verdict of negligence on the part of the defendant might be or might have been entered, and I think that could have been assumed and was assumed during the argument. Although, we

of course, realize all the defendant's case—in fact none of the defendant's case has been presented. Mr. Gass, I would ask that where the Court said earlier 'plaintiff's case'—'when the plaintiff's evidence is closed', what the Court should have said and intended to have said was that the Court declares the plaintiff's evidence rested instead of closed. I don't want to give the idea the statement was precluding other evidence."

The jurors were then returned to the courtroom and the trial court gave them an explanation for terminating the case.

Judgment was entered for the defendant on the ground the plaintiff was guilty of contributory negligence as a matter of law. The reason given by the trial court was that the plaintiff failed to see a vehicle approaching on Park Place from the north which was there to be seen. He declared the defendant's vehicle aproaching from the north was a hazard and should have been seen by any careful driver.

The trial judge concluded:

". . . The costs of the case must be charged to the plaintiff. *And in addition, the court will assess the tangible costs that can be computed—jury fees, lunch money, the mileage paid to the jury panel called to the courthouse today to try this case—those costs will be computed and added to the costs paid by the plaintiff.* (Emphasis supplied.)

"The jury is now discharged from this case and from further service on the summons. The record may be closed."

The foregoing clearly demonstrates arbitrary action on the part of the trial court, which has prejudicially affected the right of the plaintiff to fully present his evidence in the trial of the case. The trial court required the plaintiff to present a portion of his case in chief by proffered testimony, which at best was summarily stated. It also suggested interposition of the appropriate motion by counsel for the defendant. The trial court took into consideration depositions which had never been offered into evidence by either party, and whose admissibility was never determined. Furthermore, the trial court assessed court costs contrary to the provisions of K. S. A. 60-2003.

Jury fees, lunch money, and the mileage paid to the jury panel called to the courthouse for the trial of the case are not among the items of cost assessable to a party litigant by the foregoing section of the statute. These jury fees and costs are payable by the county from the county treasury. (K. S. A. 1970 Supp. 28-122; and K. S. A. 28-150.)

The trial court in directing the payment of these costs by the plaintiff disregarded the clear statutory directive.

The taxation of costs is purely a creature of statute and a court has no inherent power to award costs beyond statutory authorization. The point has been reviewed many times by this court regarding the taxation of attorneys' fees as costs. (*Walker v. Davis Van & Storage Co.*, 198 Kan. 452, 424 P. 2d 473; and *McGuire v. McGuire*, 190 Kan. 524, 376 P. 2d 908.)

The appellee on appeal relies on the proposition that admissions made by a party in an action are the strongest kind of evidence (*Hiniger v. Judy*, 194 Kan. 155, 398 P. 2d 305) and upon the rules stated in *Blackmore v. Auer*, 187 Kan. 434, 357 P. 2d 765, where this court said:

"The vigor of the rule heretofore stated in testing the sufficiency of the evidence on demurrer yields to the impact of admissions made by a party in his testimony while a witness in the case, and such admissions, frequently spoken of as informal admissions, are binding and conclusive upon him if uncontradicted or unexplained, whether such admissions are elicited on direct examination or on cross examination of the party. Direct application of the foregoing rule was made in *Bell v. Johnson*, 142 Kan. 360, 46 P. 2d 886. Syllabus ¶ 2 reads:

" 'Where the plaintiff, who is the only witness in his behalf, testifies to a state of facts which precludes his recovery, the effect cannot be avoided, and he is bound thereby.'

". . . Though stated in various ways, the rule is applied when the plaintiff's own testimony convicts him of contributory negligence. . . ." (pp. 441, 442.)

A case to the same effect is *Folkerts v. Kansas Power & Light Co.*, 190 Kan. 159, 372 P. 2d 997.

Cases upon which the appellee relies for the proposition that the appellant has by his admissions established his contributory negligence as a matter of law are *Mies v. Twietmeyer*, 193 Kan. 97, 392 P. 2d 118; *Smithson, Executor v. Dunham*, 201 Kan. 455, 441 P. 2d 823; and *Jarboe v. Pine*, 189 Kan. 44, 366 P. 2d 783.

Whether the appellant is guilty of contributory negligence as a matter of law when he is involved in an intersection collision, where he testifies he did not see the other automobile with which he collided at the intersection, is a highly controversial matter in this jurisdiction. *Sullivan v. Johnston*, 164 Kan. 386, 190 P. 2d 417, and the authorities reviewed and cited therein are indicative. Fine points of distinction are made in the cases, and the proffer here required of the plaintiff in presenting his evidence was wholly unwarranted.

We do not, however, rest our decision on the controversial nature

of the legal proposition just mentioned. Instead, we bottom our decision on the proposition that the plaintiff in the trial of a negligence action to a jury is entitled to present all of his evidence bearing on the material issues on his case in chief in open court before a motion for a directed verdict may properly be entertained. The plaintiff is not required, as the trial court directed here, to proffer a portion of his evidence. It is a prerequisite to a motion for a directed verdict lodged by the defendant that all of the plaintiff's evidence on the material issues be presented before the jury in open court where the rules of evidence prevail. (See K. S. A. 60-250.) Under all of the facts and circumstances here presented the trial court has no authority to terminate the plaintiff's case by arbitrarily declaring "the plaintiff's evidence rested."

The rules to be applied in reviewing the propriety of an order by the trial court sustaining a motion for a directed verdict are set forth in *Toole v. Johnson,* 195 Kan. 88, 402 P. 2d 823.

The provisions of K. S. A. 60-241 (*b*) authorize the defendant in an action *tried to the court* without a jury to move for involuntary dismissal of the action *at the close* of the plaintiff's case, where, upon the facts and the law, the plaintiff has shown no right to relief. (*Mackey-Woodard, Inc. v. Citizens State Bank,* 197 Kan. 536, 419 P. 2d 847.) Clearly, that is not the situation here, where the case was being tried to a jury. Here the defendant's motion to dismiss, stated as an alternative to the motion for a directed verdict, had no office to perform.

The judgment of the lower court is reversed with directions to grant a new trial.