No. 46,229

CLAYTON W. LOGAN, *Appellant*, v. JOHNNIE D. MCPHAIL, *Appellee*.

(494 P. 2d 1191)

Opinion filed March 4, 1972.

*Otto J. Koerner*, of the firm of Koerner & Carnahan, of Wichita, argued the cause, and *G. E. Carnahan*, of the same firm, was with him on the brief for the appellant.

*Tyrus C. Kaufman*, of the firm of Martz, Wendelken, Bonwell & Fry, of Wichita, argued the cause, and *Elliott Fry*, of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is an appeal by the plaintiff, Clayton W. Logan, from a judgment entered in favor of the defendant, Johnnie D. McPhail, after the trial court had removed the case from the jury. Logan had sued to recover damages for severe personal injuries

suffered in a collision between his vehicle going south on Bickel Street in the city of Wichita, Kansas, and a vehicle driven by McPhail as it was leaving the north bound exit ramp from I-235, the traffic on which was controlled by a stop sign. The right front bumper of the McPhail vehicle struck the right rear fender of Logan's automobile, throwing the latter against a sign post and into the opposite lane of traffic where it hit an oncoming car. We shall refer to the parties as plaintiff, or Logan, on the one hand and defendant, or McPhail, on the other.

At the trial, evidence was produced to the effect that Logan was traveling in a normal manner at the posted speed of 40 m. p. h. and that just before the collision, he swerved from the outside right lane of traffic where he had been driving to the inside lane. There was testimony that defendant did not come to a complete stop at the stop sign guarding Bickel Street, although he himself testified otherwise. The defendant was frank in testifying that he did not see the Logan vehicle until it flashed right in front of him, although the evidence is undisputed and admitted by the defendant himself, that from the ramp a driver could see, without obstruction, a distance of two blocks in the direction from which Logan was coming.

After the plaintiff had called his witnesses—four in number—to testify on the issue of liability, the following colloquy took place in the jury's presence:

"The Court: Call the next available witness, please.

"Mr. Koerner: There are no available witnesses except Dr. Miller. I can call him if the Court takes a recess to see if he can come down. As I informed the Court, Dr. Miller asked to be on at 9:30 in the morning.

"The Court: Is the Plaintiff not present?

"Mr. Koerner: I choose not to use him.

"The Court: A motion is in order for a dismissal of the lawsuit for failure of Plaintiff to have witnesses available.

"Mr. Fry: I would so move, your Honor.

"The Court: Does the Plaintiff want to call the available witness?

"Mr. Koerner: I would like an opportunity to call Dr. Miller.

"The Court: Is Dr. Miller present?

"Mr. Koerner: He is under subpoena to this Court, and by statement to your Honor this morning, you indicated it would be all right for him to come at 9:30 in the morning. Since it is this early in the afternoon, I would like permission to call him and get him down here.

"The Court: This motion will be sustained unless the Plaintiff calls a witness in the courtroom that is available.

"Mr. Koerner: Would you take the stand, please? (Mr. Koerner motioned to Mr. Logan, the Plaintiff.)"

The plaintiff phrases his first point on appeal in this fashion: "It was error for the trial court to order that plaintiff testify under threat of dismissal."

A trial court must of necessity be afforded much latitude in the control of its docket to eliminate procrastination and delay and to expedite the orderly flow of its business. The massive increase in litigation which is common today in this country might well engulf our judicial system to the point of strangulation if courts were not possessed of authority to cleanse their dockets of ancient cases and to dispose, in somewhat summary fashion, of those matters which are not being timely and diligently prosecuted. More than once this court has encouraged the weeding out of stale and dormant cases in the interest of the prompt and orderly dispatch of judicial business. (*City of Wichita v. Houchens*, 184 Kan. 297, 335 P. 2d 1117; *City of Wichita v. Catino*, 175 Kan. 657, 265 P. 2d 849; *Carter v. State Department of Social Welfare*, 186 Kan. 187, 348 P. 2d 609.)

However, the power of a court to dismiss a lawsuit for lack of prosecution is not without limitation. Its authority must be exercised within the bounds of a sound judicial discretion. In *Reddington v. Rank*, 176 Kan. 484, 271 P. 2d 807, it was said:

". . . [I]t is highly important that the drastic procedure of dismissing an action involving rights of a citizen should be exercised with utmost care. . . ." (p. 490.)

In our considered opinion the permissible limits of judicial discretion were exceeded by the court in this case. The situation before the court was not one where the plaintiff had been absent at the call of the docket, which was the situation obtaining in *Wichita v. Houchens*, supra, or where he was missing on the date his case had been set for trial, as in *Wichita v. Catino*, supra, and *Carter v. State Department of Social Welfare*, supra. In the instant case, plaintiff had subpoenaed his witnesses and was personally present and represented by counsel on the day set for trial. He was all ready to go, and he did proceed with the presentation of his case to the point that only his medical testimony remained.

It is quite true that the plaintiff's medical witness, his own doctor, was not on hand when the time came that afternoon to call another witness, but plaintiff can hardly be faulted for that if the court had indicated it would be satisfactory for the doctor to testify the following morning. Moreover, the plaintiff offered to

call the doctor, if the court would take a recess, to see whether the doctor could come down. This offer, so far as the record shows, drew no response.

The case of *Bane v. Cox*, 75 Kan. 184, 88 Pac. 1083, bears considerable analogy to the case at bar and we believe the decision is sound. In that case the plaintiff and his witnesses lived in Chicago. Plaintiff's principal counsel, originally, was elected to the bench, and the lawyer who subsequently took charge of the case had no opportunity to consult with plaintiff or talk with his witnesses. A good faith effort had been made to secure depositions. When this failed, the plaintiff started to Kansas with his witnesses and had reached Kansas City, and telegraphed his attorney accordingly, before the case was called for trial in the afternoon. Counsel for plaintiff advised the court to this effect and requested a continuance until the following morning. This request was refused and the case was dismissed. The next morning the plaintiff requested a reinstatement of his case but this likewise was rejected. On appeal, this court held that under those circumstances the trial court's action seemed extreme and was, in short, an abuse of judicial discretion.

We believe it was an abuse of discretion under the prevailing circumstances for the court to threaten dismissal "unless the Plaintiff calls a witness in the courtroom that is available." The "witness in the courtroom" could refer only to the plaintiff himself, whom counsel had not intended to use for reasons which he deemed sufficient. In our opinion the judicial prerogative does not go so far as to compel a litigant to testify in his own behalf under threat of losing his lawsuit. Nor, may we add, should the trial court attempt to dictate to a litigant what witness or witnesses he must call.

After the plaintiff had finished testifying—to keep his case from being thrown out of court—the jury was dismissed until 9:30 the next morning, at which time Dr. Miller was scheduled to testify. However, as it turned out he was five minutes late. At 9:30 the court addressed itself to the jury in a statement which we quote in full:

"The Court: Gentlemen of the Jury. For some reason, unknown to this Court, there seems to be a considerable reluctance on both sides to try this lawsuit. It is possible that the paucity of evidence has created the uncertainty. Yesterday it was necessary that the Court threaten dismissal of the lawsuit in order to compel the Plaintiff to call a witness who was available in order to

prevent losing the entire afternoon from trial. As it was, almost the entire afternoon was lost anyway. At conference with counsel, while the jury was waiting, the Court tried various suggestions after Plaintiff had announced it was resting on liability to use part of the time for the hearing of a motion for judgment for the Defendant, which was said was going to be made by the defense, even counsel for the defense seemed reluctant or not anxious to pursue such a motion. So, we lost most of the afternoon yesterday. This morning it is stated the next witness for the Plaintiff is not present. The Court, under these circumstances, feels compelled to move and does move that judgment be rendered in favor of the Defendant for failure of the Plaintiff's evidence to have produced a cause of action against the Defendant. The Court finds Plaintiff's evidence has not produced proof from which the jury could reasonably infer negligence on the part of the Defendant.

"Mr. Koerner: If I may interrupt, Dr. Miller is here.

"The Court: There is no proof that the Defendant failed to stop at the stop sign or did anything else to constitute negligence under the law. In addition to that the Plaintiff's own testimony shows he was careless and negligence [sic] in his approach to this intersection. He at first said he saw nothing and then later admitted he saw the automobile—saw the other automobile but we don't know where. So what this means is the jury is called upon to speculate and speculation is not permitted. Therefore, judgment is rendered in favor of the Defendant. The costs of bringing this jury to the courthouse for the trial of this lawsuit are also to be taxed against the Plaintiff: that is, yesterday some thirty jurors reported and remained while a jury was being selected, and each was paid $5.00, so that amounts to $150.00. And it will be necessary to pay these 12 jurors another $60.00 today, making a total of $210.00. These costs are added to the Clerk's Costs and taxed to the Plaintiff. The jury is now discharged from this case and from further service on your summons."

The plaintiff complains of this ruling and we believe his complaint has merit. It is a familiar and elementary rule of law that in ruling on a motion for dismissal, or for a directed verdict, at the conclusion of the plaintiff's evidence (which in this case had not actually been concluded) the court is not to weigh the evidence but is to accept as true all facts which the evidence tends to prove in favor of the party against whom the motion is made, together with all inferences that may reasonably be drawn therefrom, and where reasonable minds might reach different conclusions from the evidence, the motion to dismiss should be denied and the case submitted to the jury. (*Springfield Tent & Awning Co. v. Rice*, 202 Kan. 234, 447 P. 2d 833; *Lord v. Jackman*, 206 Kan. 22, 476 P. 2d 596; *Noland v. Sears, Roebuck & Co.*, 207 Kan. 72, 483 P. 2d 1029.)

How does the evidence relating to the defendant's negligence in this case square with the rule? The defendant testified there was

nothing to obstruct his view for a distance of two blocks in plaintiff's direction (and this was corroborated by the investigating police officer) yet he never saw the plaintiff's car until it flashed in front of him. It is a rule of long standing that a motorist is required to keep a proper lookout for traffic and is bound to see that which he could and should have seen. (*Blakeman v. Lofland*, 173 Kan. 725, 731, 252 P. 2d 852, and cases cited therein.)

There was evidence in this case that the defendant did not come to a full stop at the stop sign as was required by law, and this alone would constitute evidence of negligence. But had the defendant fully stopped, he would not be absolved of negligence as a matter of law. K. S. A. 1971 Supp. 8-552 (*b*) not only requires the driver of a motor vehicle approaching a stop intersection to stop before entering the intersection, but it also directs that the driver, having stopped, shall yield the right-of-way to any vehicle which has entered the intersection or which is approaching so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection. The point of impact and the manner in which the two cars collided would present, at the very least, a question of fact as to whether Logan's vehicle was in such close proximity to the intersection as to constitute an immediate hazard when McPhail drove his car into the intersection. We conclude there was sufficient evidence as to the defendant's negligence to require that this issue be submitted to the jury.

We have reached a similar conclusion with respect to contributory negligence. The court stated that "the Plaintiff's own testimony shows he was careless and negligence [sic] in his approach to this intersection. He at first said he saw nothing and then later admitted he saw the automobile—saw the other automobile, but we don't know where." The court neglected to mention however that plaintiff's memory was hazy as to what occurred immediately before the collision and that he could not remember all the details. We are advised that Logan developed mental problems requiring extended care following the accident. For that reason counsel decided not to place his client on the stand; it was an important part of his trial strategy that Dr. Miller be permitted to testify as to Logan's mental state as it affected his memory. We believe the court acted precipitately in denying the doctor a chance to testify. True, he was not on hand on the stroke of 9:30 but he appeared before the court

concluded its remarks, and the court was so advised. By ignoring the doctor's presence and dismissing the case after his arrival the court acted injudiciously. In *Hodges v. Lister,* 207 Kan. 260, 485 P. 2d 165, we held that the plaintiff in a negligence action is entitled to present all his evidence bearing on the material issues before a motion for directed verdict should be entertained.

Quite apart from the foregoing circumstances, we believe the trial court erred in holding that plaintiff was guilty of contributory negligence as a matter of law. There was abundant evidence that Logan saw McPhail's vehicle prior to the accident. He so testified, and disinterested witnesses observed him swerve and change lanes before being hit. Our rule long has been that the operator of an automobile may assume that other motorists using the streets will comply with the law of the road and he is not chargeable with negligence in acting upon that assumption until he has knowledge to the contrary. (*Keir v. Trager,* 134 Kan. 505, 7 P. 2d 49, 81 A. L. R. 181; *Gardner v. Pereboom,* 197 Kan. 188, 416 P. 2d 67.) It is equally well settled that one is not guilty of negligence as a matter of law in not looking for danger where there is no reason to apprehend it. (*Wilson v. Cyrus,* 180 Kan. 836, 308 P. 2d 98; *Harbaugh v. Darr,* 200 Kan. 610, 438 P. 2d 74.) Under the testimony and the physical facts of this case, we believe the question of contributory negligence should have been submitted to the jury.

Plaintiff's final complaint relates to the taxing of costs. In assessing costs against the plaintiff, the trial court included jury fees. This action was clearly unjustified, as we recently held in *Hodges v. Lister,* supra. We need not repeat what was said in *Hodges;* the rationale of that decision is clearly outlined therein and is accessible to anyone sufficiently interested to read the opinion.

The judgment of the court below is reversed with directions to grant a new trial.