**Robert L. LOWE, Plaintiff and Appellant,**

v.

**STEELE CONSTRUCTION COMPANY, Defendant and Appellee.**

**No. 14499.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1984.

Decided May 22, 1985.

David J. Stanton, Rapid City, for plaintiff and appellant.

Allen G. Nelson of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellee.

HENDERSON, Justice.

### ACTION

This is an appeal from a court order taxing jury costs and attorney fees against appellant and his attorney. Finding no statutory authority to support such an order, we reverse.

### FACTS

Appellant, Robert Lowe, brought a personal injury suit against appellee, Steele Construction Company. Trial began on July 11, 1983. During voir dire examination of the first jury panel, the following dialogue occurred between appellant's attorney and a prospective juror:

Q. (By Mr. Stanton) I have somebody in here, I believe, I have forgotten the name, that is a claims representative or something or another. That's all it shows.

Who's a claims representative, anyone here?

A. (No response).

Q. Also shown on here is somebody connected with an insurance company.

A. (By Joann Swenson) Insurance agency.

Q. You're an insurance agent?

A. Yes.

Q. The reason I would like to ask about that is because insurance companies are always the Defendants in these kinds of cases and there's a danger that the jury is going to be connected with an insurance company and is going to have either a bias or they're going to be afraid to rule for a Plaintiff because they have to do business with insurance companies all the time.

Right now, I am going to ask you if this is going to be very difficult for you to take the position for the Plaintiff, who is working on a jobsite, injured by an unsafe condition on the jobsite, can you be absolutely impartial?

A. I don't have any complaints against that. I work in personal insurance, with auto and homeowners' insurance.

Q. Do you have anything to do with liability insurance?

A. Yes, I do. I do professional and umbrella.

Q. But not as far as business, nothing to do with construction sites or anything like that?

A. No.

Q. Do you really believe your connection with insurance companies is— what should I say, so light that you can be impartial and fair?

A. I feel I can be fair.

Q. (By Mr. Nelson) May counsel approach the bench?

A. (By the Court) Yes.

Out of the presence of the jury, appellee's counsel moved for a mistrial. The motion was granted and the entire panel was dismissed.

Because another panel was available, the court directed the Clerk to call them for that afternoon. Before this panel arrived, appellee's counsel requested the court to admonish both counsel and their respective witnesses not to discuss the matter of insurance before the new jury. Counsel for appellant agreed with this request and assured the court that he had already done

this and would again admonish his witnesses.

The second jury was seated without incident. The first witness was appellant. He was present throughout the proceedings that morning. In response to a general question, appellant began talking about liability insurance in a narrative form. Appellee's counsel moved for another mistrial outside the jury's presence. In response to the court's inquiry, appellant's counsel stated that he did not talk to his client about the insurance matter because his client had been present throughout the morning and he thought it would just be futile.

The motion for mistrial was again granted and the second jury panel was dismissed. Once again, the court directed the Clerk to call another panel of jurors. This third panel of potential jurors was successfully seated on July 12, 1983, and they returned a verdict in favor of the defendant on July 13, 1983.

Reasoning that appellant and his attorney caused the mistrials, the court held counsel responsible for all the costs of the first jury panel and two-thirds of the cost of the second jury panel. Appellant was held personally liable for one-third of the cost of the second panel. The total cost of the first two jury panels was $851.35 and was to be paid to the Clerk of Courts of Pennington County. The trial court, thereafter, also jointly and severally assessed terms against appellant and his counsel for $582.88, the amount of attorney fees incurred by appellee in the first day's attempt to seat two jury panels and conduct the trial.

## ISSUES

### I.

WERE THE QUESTIONS ASKED OF THE PROSPECTIVE JUROR REGARDING HER RELATIONSHIP WITH AN INSURANCE COMPANY PROPER? WE HOLD THAT THEY WERE NOT.

### II.

DOES THE TRIAL COURT HAVE AUTHORITY TO ASSESS JURY COSTS AND ATTORNEY FEES INCURRED IN A MISTRIAL AGAINST THE ATTORNEY OR PARTY CAUSING A MISTRIAL? UNDER OUR STATUTES, WE HOLD THAT IT DOES NOT.

## DECISION

### I.

Recently, since this case was submitted on briefs, this Court decided *Hoffman v. Royer*, 359 N.W.2d 387 (S.D.1984), wherein this Court unanimously held on this specific point that:

[I]t is now established that in personal injury, wrongful death, and property damage claims tried following the date of our mandate in this case the parties should be restricted to inquiring on voir dire whether any member of the jury panel is an officer, director, employee, agent, or stockholder in any corporation. If there are no affirmative responses to this question, there should be no further questioning along this line. If there is an affirmative response, counsel should be permitted to inquire regarding the nature of the relationship and the name of the corporation. This procedure should provide adequate information to the parties without injecting the element of insurance in a situation in which there is absolutely no justification for it.

*Id.* at 391. The Court, thereafter, also expressly modified all prior decisions in conflict with the above statement.

However, although the *Hoffman* standard is the pattern to be followed by trial courts after December 12, 1984, it was not the state of the law during the trial of the case at bar. Therefore, the issues at hand will be examined in light of our decisions prior to *Hoffman*.

Initially, appellant contends that no taxation of jury costs should have been assessed against him because the trial court erred in granting both mistrials. We agree and disagree in part with his contention.

As to the first incident, appellant insists that counsel, as a matter of law, is entitled to delve into a venireman's possible bias for the purpose of challenging the individual for cause or for exercising peremptory challenges intelligently. Appellant's statement of the law is correct. Though evidence of liability insurance is generally inadmissible on the issue of negligence, SDCL 19–12–13,[1] certain questions concerning liability insurance were allowed in voir dire to determine potential juror bias or prejudice. This Court determined, almost thirty years ago, that a proper form of this question might be whether the juror was an officer, agent, employer, or stockholder of an insurance company. *Bartlett v. Gregg*, 77 S.D. 406, 92 N.W.2d 654 (1958). While it was not intended that counsel be held to the exact wording of the above-phrased question, it was intended that the inquiry be made in good faith. *Jacobson v. Coady*, 77 S.D. 1, 84 N.W.2d 1 (1957). The matter of determining counsel's good faith rests with the discretion of the trial court. *Bartlett*, 92 N.W.2d 654.

Though counsel's initial questions were within the contemplation of the above rules, the trial court found counsel's explanation of the inquiry to the prospective jurors not to be so contemplated, for it expressed:

> [T]he ... inquiry, made without advanced notification of the Court, was not within the intent or language approved by the Supreme Court; instead, it was a speech by counsel which flies in the face of South Dakota statutes and case law. Most importantly, it was not asked in the good faith attempt to determine potential juror bias; it was asked to prejudice the jury concerning defendant's liability insurance coverage.

The trial court was not clearly erroneous in finding the statements to be improper and did not abuse its discretion in granting a mistrial.

The matter of determining good faith of counsel in his examination of prospective jurors must of necessity rest within the sound discretion of the trial court. The trial court knows the attorneys, usually most of the jury panel, and the type of community in which the trial is held. From this knowledge the trial court is better enabled to determine the good faith of counsel than we can from the printed record.

*Bartlett*, 77 S.D. at 415, 92 N.W.2d at 659. The rule against mentioning insurance developed specifically as a means of protecting defendants against the possibility that jurors might be influenced in their finding of liability or damages by the fact of insurance. *See* E. Cleary, *McCormick's Handbook of the Law of Evidence* § 201, at 479 (2nd ed. 1972). The exception carved out by previous case law in this state resulted from judicially attempting to balance the equities and insure a fair and impartial jury for both parties.

To inquire whether individuals have any interest in or affiliation with an insurance company is not the same as stating in open court that "insurance companies are always the Defendants in these kinds of cases...." As the trial court noted in granting the mistrial, in light of the weight of then-existing South Dakota case law, counsel "knew or should have known that the question and in fact it was more of a stump speech than a question, was improper." The questions could have been couched in more veiled terms in order to get the needed information without directly stating that the defendant in the case would probably be an insurance company.

Appellant claims it was an abuse of discretion to grant a mistrial in the second instance because his mention of insurance on direct examination was totally inadvertent and unresponsive to the question propounded. When asked by the trial court

---

1. SDCL 19–12–13 provides:

   Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This section does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

why he mentioned it, appellant stated: "I wasn't thinking. I'm scared."

The case of *Schuetzle v. Nash-Finch Co.*, 72 S.D. 588, 594, 38 N.W.2d 137, 140 (1949), held:

Statements of witnesses implying that the defendant carried liability insurance, not responsive to questions asked but in the nature of voluntary statements that could not have been anticipated, are not deemed to be reversible error if they are excluded from consideration by the jury under proper instructions of the court.

However, under the facts of the present case, the trial court's grant of a mistrial was not an abuse of discretion. The court specifically ordered both counsel to direct all witnesses not to mention insurance. Appellant's counsel failed to discuss the matter with his client. He felt such discussion to be unnecessary because of appellant's attendance at the earlier mistrial proceedings. This was a mistake of judgment. Though the court could have admonished the jury to disregard the reference, appellant would have gained an unfair advantage to the prejudice of appellee.

## II.

The second issue we must address involves the trial court's decision to tax the jury costs and attorney fees occasioned by the mistrials to appellant and his counsel. We initially note there are no South Dakota statutes or cases which give the trial court jurisdiction to so assess the attorney or party causing the mistrial. The reaction of the trial court is therefore totally without South Dakota precedent.

■ "In the absence of a statute or rule of court or some agreement expressly authorizing taxing of attorney's fees in addition to ordinary statutory costs, such an item of expense is not allowable." *NBC Leasing Co. v. Stilwell,* 334 N.W.2d 496, 500–01 (S.D.1983) (quoting *Tracy v. T & B Constr. Co.,* 85 S.D. 337, 340, 182 N.W.2d 320, 322 (1970)). *See also, Matter of Estate of Weickum,* 317 N.W.2d 142 (S.D. 1982); and *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251 (S.D.1976).

SDCL 15–17–6 provides: "The compensation of attorneys and counselors at law for service in civil and criminal actions and proceedings must be left to the agreement, express or implied, of the parties." SDCL 15–17–7 provides in part: "The court may allow attorneys' fees as costs for or against any party to an action only in the cases if it is specifically provided by statute...."

■ In the present case, the trial court adjudged appellant and his attorney jointly and severally liable for appellee Steele Construction's attorney fees for the services performed during the two mistrials. We hold, however, that the trial court was without authority to so assess appellant and his attorney and reverse the judgment awarding appellee terms of $582.88.

As stated above, a trial court may award attorney fees only when authorized by statute, rule of court, or agreement of the parties. No statute or rule of court exists which authorizes the award of attorney fees occasioned upon a mistrial and no such agreement existed in the present case. The trial court was therefore without authority to so assess appellant and his counselor.

■ The trial court also taxed appellant and his attorney with the cost of the first two jury panels which were dismissed upon a motion for mistrial as stated in the facts above. The combined cost to the county for these panels was $851.35.

In its Memorandum Decision, Findings of Fact, Conclusions of Law, and Judgment, all of which consisted of one document, the trial court recognized that no South Dakota statutes or cases gave it jurisdiction to assess jury costs against an attorney or party causing a mistrial. However, it concluded that such was "an inherent power of the court because it is a power which is related to the existence of order and efficiency of the Court's jurisdiction and further does not abridge or negate the constitutional rights of those individuals." The trial court primarily based its conclusion on *Jacobson v. Avestruz,* 81 Wis.2d 240, 260

N.W.2d 267 (1977), which held that the trial court had the inherent power to assess jury costs against the parties when they settled their dispute after opening arguments. The *Jacobson* Court also determined that a statute similar to SDCL 15–17–34 did not negate the court's inherent power to so assess jury costs. We disagree with the trial court's conclusion, and its reliance on *Jacobson,* and reverse its assessment of jury costs occasioned by the mistrials.

"[T]he taxation of costs was unknown to the common law, and *the courts are without the inherent power to tax costs.* The authority to tax such costs should not be implied, but must rest upon a clear legislative grant of power to do so." *City of Aberdeen v. Lutgen,* 273 N.W.2d 183, 185 (S.D.1979) (emphasis supplied).[2] *See also, Basin Elec. Power Co-op. v. Lang,* 304 N.W.2d 715, 718 (S.D.1981); *State Highway Comm'n v. Hayes Estate,* 82 S.D. 27, 140 N.W.2d 680 (1966); *Buckingham Transp. Co. v. Black Hills Transp. Co.,* 66 S.D. 433, 285 N.W. 300 (1939); *In Interest of Boehm,* 226 Kan. 247, 596 P.2d 1242 (1979); *Hodges v. Lister,* 207 Kan. 260, 485 P.2d 165 (1971).

■ "Fees of jurors are taxable as costs, *under the statutes* of many jurisdictions." 20 C.J.S. *Costs* § 217, at 455 (1940) (emphasis supplied). An examination of our statutes, however, does not reveal a statute which authorizes the taxation of jury costs against the party or attorney causing a mistrial.[3] SDCL 15–17–34 does authorize the trial court to impose, against the par-

ties, the expenses of requiring the jury to report if a civil jury case is settled within forty-eight hours of the time the jury is to report, but this is not a clear legislative grant of power to assess jury costs against the persons causing a mistrial. Any contrary conclusion is an extremely weak implication and we reject such a construction.

Nor did the trial court have the authority to tax such costs under the purview of SDCL 15–17–16.[4] "Costs" are indemnity for the prevailing parties' expenses in a civil suit. SDCL 15–17–1; *City of Aberdeen v. Lutgen,* 273 N.W.2d 183. Jury costs were not an expense of appellee and the Clerk of Courts of Pennington County was not the prevailing party. If the trial court believed appellant and his attorney to be willfully disobeying its order not to mention "insurance," it should have proceeded with contempt proceedings. It did not have the inherent or statutory authority to tax the jury costs and attorney fees occasioned by the mistrials against appellant and his counselor.

The orders and judgments, in regard to assessing such expenses, are hereby reversed.

MORGAN, J., concurs.

FOSHEIM, C.J., concurs specially.

WOLLMAN, J., and WUEST, Circuit Judge, Acting as Supreme Court Justice, concur in part and dissent in part.

FOSHEIM, Chief Justice (concurring specially).

South Dakota trial courts for granting assessment of jury costs or attorney's fees occasioned by mistrials. Until the legislature speaks, we are bound by precedent and the state statutes and not a philosophical approach as to what the law might be, could be, or should be.

---

2. Notwithstanding the concurrence in part, dissent in part of Justice Wollman and the special concurrence of the Chief Justice, the law appears settled in South Dakota.

   *Basin Elec. Power Co-op. v. Gosch,* 90 S.D. 222, 240 N.W.2d 96 (1976), cited in the special concurrence, did not involve a motion for mistrial. It involved a motion for new trial grounded in affidavits sounding in the discovery of new evidence and an award influenced by passion and prejudice.

   *Byre v. Wieczorek,* 88 S.D. 185, 217 N.W.2d 151 (1974), also cited in the special concurrence, has no application to the facts at hand because it did not involve a motion for mistrial. Again, it was a motion for a new trial based on newly discovered evidence. The treatise law, likewise cited in the special concurrence, is inapposite because there is no discretion granted unto

3. *Schaub v. Job,* 335 N.W.2d 568 (S.D.1983), and *Olesen v. Snyder,* 277 N.W.2d 729 (S.D.1979), both cited by Acting Justice Wuest, pertain to a statute, SDCL 15–17–25, expressly authorizing costs based upon an application for postponement. They are inapposite.

4. SDCL 15–17–16 provides: "In actions other than those specified in §§ 15–17–11, 15–17–12, 15–17–14 and 15–17–15, costs may be allowed or not, in the discretion of the court."

The majority opinion is correct in concluding the trial court had no authority to award attorney fees and jury costs occasioned by either mistrial. Justice Wollman is also correct, however, that some sanction more condign than contempt should be available to serve as a deterrent to those who attempt to circumvent the proper bounds of *voir dire* examination. As the majority opinion notes, granting or refusing a mistrial involves the discretion of the trial court. Likewise, whether to grant or refuse a new trial addresses the sound discretion of the trial court. *Basin Elec. Power Co-op. v. Gosch,* 90 S.D. 222, 240 N.W.2d 96 (1976); *Byre v. Wieczorek,* 88 S.D. 185, 217 N.W.2d 151 (1974). In my opinion, sanction authority inherently exists where the grant or refusal by the trial court is discretionary. Following each mistrial declaration, the trial court in the exercise of its inherent power could have imposed terms on the plaintiffs as a condition to a new trial. *See,* 66 C.J.S., *New Trial,* § 207 and cases annotated.

WOLLMAN, Justice (concurring in part, dissenting in part).

I agree with the majority opinion that the trial court did not err in granting the two mistrials.

In *Schaub v. Job,* 335 N.W.2d 568 (S.D. 1983), we held that attorney fees could be awarded as a part of the costs imposed under SDCL 15–17–25 as a condition precedent to granting a continuance based upon plaintiffs' unpreparedness for trial. I would hold that the situation before us is sufficiently analogous to that which existed in *Schaub* to justify the award of attorney fees.

The matter of imposing the costs of the two jury panels presents a much closer question. SDCL 15–17–34, which we adopted as a court rule in 1980, is not a legislative grant of power to impose jury costs in cases where the parties settle shortly before trial, but rather reflects this court's determination that the award of costs in that situation constitutes a proper exercise of judicial power. I would adopt the reasoning of the Wisconsin Supreme Court as expressed in *Jacobson v. Avestruz,* 81 Wis.2d 240, 260 N.W.2d 267 (1977), and would hold that the trial court did not exceed its inherent authority in imposing the costs of impaneling the first jury. I would hold that the trial court should not have imposed the costs of impaneling the second jury, however, inasmuch as the circumstances that necessitated granting the motion for the second mistrial were not nearly as flagrant as those requiring the first mistrial. *Cf. Jacobson v. Avestruz, supra.*

Among the considerations that compel me to conclude that the trial court had the inherent authority to assess attorney fees and costs is the lack of any other practical sanction. Contempt proceedings, although certainly appropriate in the case of willful disobedience of an order, would have been too heavy a club to swing in the circumstances of the case before us. The imposition of attorney fees and jury costs is a more practical and condign remedy, one that has the effect of making the innocent party—and the county—whole, as well as serving as a deterrent to those who may be tempted to circumvent or exceed the proper bounds of voir dire and witness examination.

WUEST, Acting Justice (concurring in part and dissenting in part).

I concur in part and dissent in part.

The majority opinion is correct in concluding the trial court had no authority to award jury costs occasioned by either mistrial. It is further correct in holding the trial court could not assess attorney fees as terms against appellant's lawyer on behalf of the appellee. It is my opinion, however, that the award of terms for attorney fees of $582.88 to appellee from appellant should be upheld. It is true that unless there is a special statute, attorney fees cannot be assessed as costs. They may be upheld, however, as terms to the opposing party. *Schaub v. Job,* 335 N.W.2d 568 (S.D.1983); *Olesen v. Snyder,* 277 N.W.2d

729 (S.D.1979). *See also* 66 C.J.S. *New Trial* § 207 (1950) and cases annotated.