Milton E. NELSON and Sandra Nelson,
Plaintiffs and Appellees,

v.

NELSON CATTLE COMPANY,
Defendant and Appellant.

Nos. 18114, 18128.

Supreme Court of South Dakota.

Argued Sept. 2, 1993.

Decided March 30, 1994.

Jack S. Theeler of Morgan, Theeler, Cogley & Petersen, Mitchell, for plaintiffs and appellees.

Mark V. Meierhenry and Sabrina Meierhenry of Danforth, Meierhenry & Meierhenry, Sioux Falls, for defendant and appellant.

GORS, Circuit Judge.

Milton and Sandra Nelson sued for damages arising out of injuries incurred when Milton Nelson fell from a grain bin he was moving for Nelson Cattle Company. A jury returned a verdict of $505,000.00 for Milton Nelson and $250,000.00 for Sandra Nelson. Nelson Cattle Company appealed and Milton and Sandra Nelson filed a notice of review. We affirm in part and reverse and remand in part.

## FACTS

Ted Nelson, Sr., has three sons, Ted, Jr., Milton (plaintiff) and Calvin. Ted Nelson, Jr., has two sons, Steve, who was 15, and

Mark, who was 14, at the time of the incident. Ted Nelson, Sr., and Ted Nelson, Jr., are the stockholders of Nelson Cattle Company, which farms 3,500 acres and feeds 2,000 cattle. At the time of his injury, Milton Nelson was 37 years old and in excellent health. He had a wife, Sandra Nelson, a baby daughter and a stepson. Although Milton Nelson was once a stockholder in Nelson Cattle Company, he moved to town several years ago and ran his own real estate and auction business in Mitchell. However, he still performed unpaid work at the farm on a regular basis.

On July 5, 1985, Milton and Calvin Nelson and Finn Tang, a visitor from Denmark, moved a portable grain bin from the Mike and Laska Schoenfelder farm ten miles to the Nelson Cattle Company farm located on the Mt. Vernon to Woonsocket road. The overhead wires were too low to get out of Schoenfelder's yard. Mike Schoenfelder then used his tractor to pull the bin through an alfalfa field to a section line road where the wires did not interfere. Milton Nelson then pulled the bin with his pickup to the Nelson Cattle Company farm.

In anticipation of difficulty with overhanging wires, Ted Nelson, Jr., had fourteen year old Mark Nelson bolt a 9–foot long two-by-four and a 16–foot long two-by-four together to make a 25–foot long tool with another board at the end forming a "T". Nails were pounded into the ends of both arms of the "T". The tool was then used to catch and lift overhanging wires so the 24–foot grain bin could pass underneath. Milton Nelson drove and Calvin Nelson and Finn Tang used the tool to lift wires. Nevertheless, the bin touched at least one overhanging highline wire on the journey, interrupting electric service to a neighboring farm.

On October 5, 1985, Milton, Steve and Calvin Nelson moved the bin back to the Schoenfelder farm. Steve Nelson drove a Nelson Cattle Company pickup. Although a different route was used to avoid overhanging wires, the wooden tool was taken as a precaution. Upon reaching Schoenfelder's farm, the same wire that had prevented their egress in July blocked their ingress in October. Steve and Milton Nelson tried to lift the wire but the tool broke about nine feet from the end with the "T". Milton then climbed upon the bin and Steve drove the pickup pulling the bin under the wire while Milton tried to hold the wire up with the broken tool. Milton fell from the bin. Steve did not see the fall, Milton did not recall the fall and Calvin was not able to testify [1].

Milton Nelson incurred $120,380.35 in medical expenses (60 days hospitalization and 17 surgeries) and permanent brain damage, permanent loss of normal vision and permanent double vision, severe motor and speech impairment and emotional and psychological problems resulting in 100% disability.

Milton and Sandra Nelson sued Nelson Cattle Company in September of 1988. A jury trial was held from August 28 to September 4, 1992. At the close of the evidence, Nelson Cattle Company moved for a directed verdict claiming lack of negligence, contributorily negligence and assumption of the risk. The trial court denied the motions and the jury returned a verdict of $505,000.00 for Milton Nelson and $250,000.00 for Sandra Nelson. The trial court entered a judgment for Milton and Sandra Nelson on the verdict and taxed $11,453.36 disbursements in favor of Milton and Sandra Nelson.

Nelson Cattle Company appealed the trial court's denial of its motions for directed verdict on lack of negligence, contributory negligence and assumption of the risk and the trial court's taxation of the compensation and expenses paid by the Nelsons to their expert witnesses in excess of the statutory witness fees. Milton and Sandra Nelson filed a notice of review of the trial court's refusal to give their requested instructions on ultrahazardous activity and *res ipsa loquitur*.

## STANDARD OF REVIEW

### NELSON CATTLE COMPANY'S MOTION FOR DIRECTED VERDICT

In *Savold v. Johnson*, 443 N.W.2d 656, 658–59 (S.D.1989), this Court said that "[w]hen faced with a motion for directed

1. Calvin Nelson was not competent to testify because of childhood illness or injury.

verdict, we must accept as true the evidence presented by the nonmoving party and indulge all legitimate inferences in favor of the party against whom the motion is brought." *Kreager v. Blomstrom Oil Company,* 379 N.W.2d 307 (S.D.1985); *Budahl v. Gordon & David Associates,* 323 N.W.2d 853 (S.D. 1982); *Myers v. Quenzer,* 79 S.D. 248, 110 N.W.2d 840 (1961). "We must determine if there is any substantial evidence to sustain the cause of action. If such evidence exists as would allow reasonable minds to differ, the case must go to the jury." *Haggar v. Olfert,* 387 N.W.2d 45, 49 (S.D.1986); *Sabag v. Continental South Dakota,* 374 N.W.2d 349, 354–55 (S.D.1985); *Lytle v. Morgan,* 270 N.W.2d 359, 361 (S.D.1978).

▬ In contrast to appeals of trials to the court, *Jones v. Kartar Plaza Ltd.,* 488 N.W.2d 428, 429 (S.D.1992), where the Supreme Court reviews findings of fact under the clearly erroneous standard, on appeal of a jury verdict, the Supreme Court is required to view the evidence and all reasonable inferences from the evidence in the light most favorable to the verdict winner and conflicting evidence is to be resolved in favor of the verdict. *Marnette v. Morgan,* 485 N.W.2d 595, 599 (S.D.1992). The Supreme Court reviews the record to determine whether there is substantial evidence to allow reasonable minds to differ; the court does not weigh evidence and substitute its judgment for that of the jury. *Westover v. East River Elec. Power,* 488 N.W.2d 892, 896 (S.D.1992). In reviewing the sufficiency of the evidence to support a verdict, the court does not weigh conflicting evidence or pass upon the credibility of witnesses. *Musch v. H–D Co-op., Inc.,* 487 N.W.2d 623, 626 (S.D.1992); *State v. Hurst,* 507 N.W.2d 918, 923 (S.D.1993). "These functions lie solely within the province of the jury as ultimate trier of fact." *State v. Burtzlaff,* 493 N.W.2d 1, 4 (S.D. 1992).

## DISCUSSION

▬ Ordinarily, questions of negligence, contributory negligence and assumption of the risk are for the jury in all but the rarest cases, *Westover v. East River Elec. Power, supra,* 488 N.W.2d at 896, so long as there is evidence to support the issues. *Gerlach v. Ethan Coop Lumber Ass'n,* 478 N.W.2d 828, 830 (S.D.1991). Breach of duty and proximate cause, *Zens v. Chicago, Milwaukee, St. Paul & Pac.,* 479 N.W.2d 155, 160 (S.D.1991), contributory negligence, *Runge v. Prairie States Ins. of Sioux Falls,* 393 N.W.2d 538, 540 (S.D.1986), and assumption of the risk, *Gerlach v. Ethan Coop Lumber Association, supra,* 478 N.W.2d at 830, are usually jury questions.

## NEGLIGENCE AND PROXIMATE CAUSE

▬ The trial court submitted the case to the jury which returned a verdict for Milton and Sandra Nelson. The trial court gave 51 instructions which followed closely the instructions submitted by Nelson Cattle Company and the South Dakota Pattern Jury Instructions for negligence, proximate cause, contributory negligence and assumption of the risk. Nelson Cattle Company did not object to any of the instructions and none of the instructions are questioned by Nelson Cattle Company on appeal.

Nelson Cattle Company claims that the trial court should have directed a verdict as a matter of law because there was no negligence by Nelson Cattle Company that proximately caused Milton Nelson's injuries.[2] However, we conclude that there was ample evidence of negligence and proximate cause to submit the case to the jury.

There was evidence that Nelson Cattle Company did not provide enough competent workers to move the bin. Calvin Nelson could not help. Steven Nelson was a 15 year old, 115 pound boy. Milton Nelson was a realtor who had not done significant farm work for several years. The jury could reasonably conclude that the crew was not up to

---

2. Nelson Cattle Company also claims that the foreseeability approach to proximate cause required a directed verdict as a matter of law. However, Nelson Cattle Company did not argue foreseeability to the court or the jury and did not object to instruction number 25, which defined proximate cause, or request that foreseeability language be added to the instruction. *Musch v. H–D Co-op, supra,* 487 N.W.2d at 624–27.

the task. *Schmeling v. Jorgensen,* 77 S.D. 8, 84 N.W.2d 558, 563, 565 (1957).

There was also evidence that Nelson Cattle Company did not provide safe tools to move the bin or a safe place to work. *Smith v. Smith,* 278 N.W.2d 155, 161 (S.D.1979); *Bunkers v. Mousel,* 83 S.D. 45, 154 N.W.2d 208, 210 (1967); *Ecklund v. Barrick,* 82 S.D. 280, 144 N.W.2d 605, 607 (1966); *Stoner v. Eggers,* 77 S.D. 395, 92 N.W.2d 528, 529 (1958); *Voet v. Lampert Lumber Co.,* 70 S.D. 142, 15 N.W.2d 579, 582 (1944). Nelson Cattle Company provided a 25–foot long home-made tool consisting of two-by-fours bolted together. The tool broke. The jury could reasonably conclude that Nelson Cattle Company did not provide adequate tools to move the bin.

While there was evidence that Ted Nelson, Jr., knew the bin was too tall to pass beneath overhanging wires and that he tried to select a route to avoid wires, there was also evidence that he did not arrange to have Mike Schoenfelder or the power company assist in getting under the wires. Also, there was evidence that Nelson Cattle Company did not explain how to use the tool correctly[3] and did not provide adequate supervision. *Smith v. Community Co-operative Ass'n of Murdo,* 87 S.D. 440, 209 N.W.2d 891, 893 (1973). The jury could reasonably conclude that Nelson Cattle Company did not provide a safe place to work or adequate supervision and instruction to move the bin. It is against this negligent conduct that we must compare the conduct of Milton Nelson.

## CONTRIBUTORY NEGLIGENCE

Nelson Cattle Company argues that Milton Nelson was contributorily negligent as a matter of law. When the facts show beyond dispute that a plaintiff was contributorily negligent more than "slight", the trial court can find for the defendant as a matter of law. *Westover v. East River Elec. Power, supra,* 488 N.W.2d at 896; *Starnes v. Stofferahn,* 83 S.D. 424, 160 N.W.2d 421, 426

(1968). However, we agree with the trial court and hold that the actions of Milton Nelson do not amount to contributory negligence as a matter of law. The jury heard testimony that could have allowed reasonable minds to conclude that Milton Nelson's negligence was slight in comparison to the negligence of Nelson Cattle Company.[4] SDCL 20–9–2. The testimony of Steven Nelson indicates that Milton Nelson was thrown from the top of the bin by the increasing tension put on the wire as Steve Nelson drove the pickup under the wire. The wire propelled Milton Nelson from the bin like a slingshot. Reasonable jurors could conclude that Milton Nelson's conduct in climbing the bin and using the broken tool was slight compared to the negligence of Nelson Cattle Company in failing to provide enough competent workers, safe tools, a safe work place and adequate instruction and supervision.[5]

## ASSUMPTION OF THE RISK

Assumption of the risk is an affirmative defense that must be pled and proved by the defendant. There are three elements to an assumption of the risk defense. *Westover v. East River Elec. Power, supra,* 488 N.W.2d at 900:

(1) Did the employee have actual or constructive knowledge of the risk?

(2) Did the employee have an appreciation of the risk?

(3) Did the employee voluntarily accept the risk with sufficient time, knowledge and experience to make an intelligent choice?

There was no evidence that Milton Nelson knew (1) the dangers of using the handmade wirelifting tool or (2) that he knew that the tool might break or (3) that he knew how dangerous it was to pass the bin beneath overhanging wires. Neither Milton Nelson nor 15–year–old Steven Nelson knew or understood or discussed the danger presented by the tension on the wire. They thought

---

**3.** The tool broke because it was used incorrectly.

**4.** Instruction number 21 contained the proper language concerning comparative negligence.

**5.** Nelson Cattle Company should have requested a jury interrogatory to determine whether the jury found Milton Nelson to be contributorily negligent and to what degree.

the route selected would be free of wires[6]. Milton Nelson did not have actual knowledge of the risk posed by passing the bin beneath the wires.

■ The next consideration is whether Milton Nelson had constructive knowledge of the danger. A person has constructive knowledge of a risk if it is plainly observable so that anyone of competent faculties is charged with knowledge of it. *Westover v. East River Elec. Power, supra*, 488 N.W.2d at 901. The employer, Ted Nelson, Jr., of Nelson Cattle Company knew how difficult it was to move the bin under overhanging wires but Milton Nelson was an inexperienced, part-time farm hand who had no prior experience moving bins under wires.

■ The second element is whether Milton Nelson appreciated the risk. A person can be deemed to appreciate a risk if it is a risk that no adult person of average intelligence[7] can deny[8]. *Westover v. East River Elec. Power, supra*, 488 N.W.2d at 901. The jury could reasonably conclude from the foregoing evidence that Milton Nelson did not appreciate the risk.

The third element is whether the plaintiff voluntarily accepted the risk, having the time, knowledge and experience to make an intelligent choice. *Westover v. East River Elec. Power, supra*, 488 N.W.2d at 901. Like the other two factors, there was sufficient evidence for the jury to find against Nelson Cattle Company on this point. We cannot say that the trial court erred in denying Nelson Cattle Company's motion for directed verdict on the basis that Milton Nelson assumed the risk of his injuries as a matter of law.

**6.** The homemade wire lifting tool was only taken along as a precaution.

**7.** Prior to his injury, Nelson had an IQ over 140 and intellectually ranked in the top 2–3% in the United States. Nelson Cattle Company emphasizes this to show that Nelson should have known better than to climb up on a grain bin to lift wires with a broken stick.

**8.** Instruction number 31a stated: "Employer cannot be held liable for failure to furnish a safe place to work if the danger is open and obvious to such an extent that employee must know by use of ordinary intelligence the danger that confronts him."

## DECISION

Nelson Cattle Company would have this court substitute its decision for the decision of the jury. "It is only when the evidence is such that reasonable men can draw but one conclusion from facts and inferences that they become a matter of law and this occurs rarely." *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19, 22 (1968). This Court will not become the thirteenth juror in this case. *Malloy v. Com. Highland Theatres, Inc.*, 375 N.W.2d 631, 635 (S.D.1985). The trial court's denial of Nelson Cattle Company's motion for directed verdict is affirmed.

## TAXATION OF COSTS

In addition to entering a judgment in favor of the Nelsons against Nelson Cattle Company (for $505,000.00 for Milton Nelson and $250,000.00 for Sandra Nelson), the trial court taxed disbursements of $11,453.36 in favor of the Nelsons and against Nelson Cattle Company. Nelson Cattle Company objected to the taxation of expert witness fees of $6,945.20 for ten expert witnesses.

■ An order taxing costs is a special order under SDCL 15–6–54(b). *Strand v. Courier*, 434 N.W.2d 60, 66 (S.D.1988)[9]. If costs are taxed after entry of the judgment the order may only be reviewed by a separate appeal from the order. *Strand v. Courier, supra*, 434 N.W.2d at 66; *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114, 119 (S.D.1977); *Sambo v. Semmler*, 61 S.D. 228, 248 N.W. 197 (1933). An appeal may be

**9.** Although SDCL 15–6–54(d) was rewritten in 1986 by Supreme Court Rule 86–23, and amended again in 1990 by Supreme Court Rule 90–04, the taxation of costs is still a special procedure by which the clerk inserts the costs in the judgment based on the application if there is no objection or based upon the court's order following a hearing on any objections filed. In either event, the costs are still inserted in the judgment after the fact. The last paragraph of SDCL 15–6–54(d) provides that this may take place up to thirty days after entry of the judgment.

taken from the judgment without appealing taxation of costs and an appeal from taxation of costs may be taken without appealing the judgment. *Strand v. Courier, supra,* 434 N.W.2d at 66. Nelson Cattle Company appealed both. The judgment on the jury verdict was entered on September 9, 1992. The order taxing costs was entered on October 6, 1992, following a hearing on Nelson Cattle Company's objections on the same day. The notice of appeal dated October 21, 1992, and filed October 22, 1992, appeals both the "whole of the final judgment rendered ... on the 9th day of September, 1992" and the "Order Denying ... Objections to Taxation of Costs entered on the 6th day of October, 1992." Taxation of disbursements is properly before this Court.[10]

## STANDARD OF REVIEW

Upon review of taxation of disbursements, the question is whether the trial court abused its discretion. *Grady v. Felker,* 85 S.D. 477, 186 N.W.2d 509, 513 (1971); *Wagner v. Wagner,* 83 S.D. 565, 163 N.W.2d 339, 343 (1969). *See, Magbuhat v. Kovarik,* 445 N.W.2d 315, 316–18 (S.D.1989). "Abuse of discretion" is discretion not justified by, and clearly against, reason and evidence. The test is whether a judicial mind, in view of the law and circumstances, could reasonably have reached the conclusion. *Dacy v. Gors,* 471 N.W.2d 576, 580 (S.D.1991).

## DISCUSSION

Costs are not recoverable except by statute. *Salem Sales, Inc. v. Brown,* 443 N.W.2d 14, 15 (S.D.1989). A party to litigation incurs many expenses but only those specifically authorized by statute may be taxed as costs. *Arcon Const. Co. v. S.D. Cement Plant,* 349 N.W.2d 407, 415 (S.D.

1984). The trial court has some discretion in taxing costs, *Grady v. Felker,* 85 S.D. 477, 186 N.W.2d 509, 513 (1971), but the court must use cautious restraint within the guidelines set by statute. *Wagner v. Wagner,* 83 S.D. 565, 163 N.W.2d 339, 343 (1968).

On July 1, 1992, the concept of costs as an indemnity was abolished and the taxation of disbursements was substituted. SDCL 15–17–36. SDCL 15–17–37[11] provides the following:

> The prevailing party in a civil action or special proceeding may recover expenditures necessarily incurred in gathering and procuring evidence or bringing the matter to trial. Such expenditures include costs of telephonic hearings, costs of telephoto or fax charges, fees of witnesses, interpreters, translators, officers, printers, service of process, filing, expenses from telephone calls, copying, costs of original and copies of transcripts and reporter's attendance fees, court appointed experts and other similar expenses and charges. These expenditures are termed "disbursements" and are taxed pursuant to § 15–6–54(d).

SDCL 15–17–37 replaced SDCL 15–17–4[12] which provided the following:

> In all cases where a party is allowed to recover costs the clerk must also tax as a part of the judgment the allowance of such party's witnesses', interpreters', translators', officers', and printers' fees, fees for the service of process, filing fees and the necessary expense of taking depositions and procuring necessary evidence.

This Court has held repeatedly that SDCL 15–17–4 did not allow taxation of expert witness' charges for services, testimony and expenses in excess of the statutory witness fee

10. The order taxes costs in the amount of $11,453.36 "plus the fee of Dr. William Arbes when received". By letter dated December 15, 1992, Nelsons' attorney informed the clerk that the fee of Dr. Arbes was $360. Apparently this was never taxed other than the above reference. Since Dr. Arbes fee was submitted after the appeal on October 22, 1992, it is not before the court and has not been considered by us. It may also be untimely under the last paragraph of SDCL 15–6–54(d) which provides that costs and

disbursements are waived if a proper application is not submitted within thirty days of entry of judgment.

11. SDCL 15–17–37 was enacted by the Legislature as Section 2 of Chapter 148 of the 1992 Session Laws and took effect on July 1, 1993. SDCL 2–14–16.

12. SDCL 15–17–4 was repealed by Section 26 of Chapter 148 of the 1992 Session Laws.

payable under SDCL 19–5–1 [13]. *Heer v. State*, 432 N.W.2d 559, 564 (S.D.1988); *Arcon Const. Co. v. S.D. Cement Plant, supra,* 349 N.W.2d at 416. The only exception was where a statute specifically authorized recovery of expert witness fees. SDCL 21–35–23 [14]; *City of Winner v. Bechtold Investments,* 488 N.W.2d 416, 420 (S.D.1992).

SDCL 15–17–37 was part of a legislative package [15] promoted by the State Bar of South Dakota to reform taxation of costs. The proposal was to eliminate taxation of costs as an indemnity [16] and to substitute taxation of disbursements.[17] The concept included making the winning party whole for expenses incurred in successful litigation. SDCL 15–17–36.

Expert witness fees have been a thorn in the side of litigants for years. Twenty dollars per day plus mileage does not reimburse litigants for the cost of experts who often charge hundreds of dollars per hour. Yet expert testimony is generally advisable, if not mandatory [18], for the successful litigant. Unfortunately, the legislation failed to reform taxation of expert witness fees.[19]

■ The only mention in SDCL 15–17–37 of "expert witness" fees is in connection with "court appointed experts." Experts called by litigants are not "court appointed experts." SDCL 19–15–16. The only other reference is to "fees of witnesses" which is no different than the reference to "such party's witnesses' ... fees" that previously appeared in SDCL 15–17–4 (repealed by Section 26 of Chapter 148 of the 1992 Session Laws). When a word or phrase is defined in any statute, the definition applies to the word or phrase wherever it occurs in the code unless a contrary intention appears plainly. SDCL 2–14–4. "Witness fees" are set by SDCL 19–5–1 at twenty dollars per day plus twenty-one cents per mile. SDCL 15–17–37 could easily have said "fees of witnesses *including reasonable compensation for expert witnesses*" or "fees of witnesses *and a reasonable fee for the compensation and expenses of expert witnesses*" [20]. However, in the absence of some clear reference to expert witness fees being treated different from statutory witness fees, the reform legislation falls short of the mark.

To hold otherwise would be to allow something other than the plain meaning of the words. If the term "fees of witnesses" includes the actual amount of money spent for

---

**13.** At the time of trial, witness fees under SDCL 19–5–1 were twenty dollars per day plus twenty-one cents per mile, each way.

**14.** SDCL 21–35–23 allows "compensation for not more than two expert witnesses ..." when the judgment awarded in a condemnation case exceeds the offer by more than twenty percent.

**15.** House Bill 1139, Chapter 148 of the 1992 Session Laws.

**16.** Under South Dakota law before the "reform" package, costs included both out-of-pocket expenses, SDCL 15–17–4 and 15–17–5 (repealed § 26, ch. 148, 1992 Session Laws) and indemnities, SDCL 15–17–1 and 15–17–2 (repealed § 26, ch. 148, 1992 Session Laws).

**17.** *See* pages 56–57 of the State Bar of South Dakota Program for the 59th Annual Meeting, June 14–15, 1991. "Disbursements" are the actual out-of-pocket expenditures enumerated in SDCL 15–17–37.

**18.** Experts are necessary in many medical malpractice cases, *Savold v. Johnson,* 443 N.W.2d 656, 658–59 (S.D.1989), in many legal malpractice cases, *Nemec v. Deering,* 350 N.W.2d 53, 56 (S.D.1984), and in many condemnation cases, SDCL 21–35–15, 21–35–23 and *State Highway*

*Commission v. Beets,* 88 S.D. 536, 224 N.W.2d 567, 569 (1974).

**19.** The "reform" legislation was not derailed in the process, by amendment or otherwise. Section 2 of the proposed legislation, as it appeared on page 25 in the February, 1991, NEWSLETTER, of the State Bar of South Dakota, contained the following: "the prevailing party ... may recover ... fees of witnesses...." The identical proposal appeared on page 58 in the PROGRAM of the 59th Annual Meeting of the State Bar of South Dakota, as follows: "the prevailing party ... may recover ... fees of witnesses...." The proposal next appeared as House Bill 1139, which contained the following: "the prevailing party ... may recover ... fees of witnesses...." The proposal was enacted without amendment in the House or Senate as Section 2 of Chapter 148 of the 1992 Session Laws with the language that currently appears in SDCL 15–17–37.

**20.** The language "fees of witnesses *and a reasonable fee for the compensation and expenses of expert witnesses*" contains both an explicit authorization for the court to go beyond the "witness fees" set by 19–5–1 and a limitation to allow the court to hold disbursements for expert witnesses to reasonable amounts.

the compensation and expenses of the expert witness, then it would also include the actual amount of money spent for the compensation and expenses of lay witnesses. *Arcon Const. Co. v. S.D. Cement Plant, supra,* 349 N.W.2d at 416. Lay witnesses might charge for lost time or travel to and from court just like experts charge for time and travel. This could not be the intention of the legislature.

Even if we determined that SDCL 15–17–37 allows the taxation of the compensation and expenses of expert witnesses in excess of the statutory witness fees provided in SDCL 19–5–1, this case was commenced in September of 1988. In *First Nat. Bank of Minneapolis v. Kehn Ranch,* 394 N.W.2d 709, 716–17 (S.D.1986), we held that a change in the cost statutes in 1984 did not apply to a case filed in 1983 where the trial was held after the statute took effect. The statute does not express any intent to be retroactive. SDCL 2–14–24. Further, if SDCL 15–17–37 allowed taxation of expert witness fees in excess of the statutory fees, it would be a new and substantially greater liability for witness fees and consequently only be applied prospectively. *Kehn Ranch, supra,* 394 N.W.2d at 716–17.

## DECISION

The trial court's taxation of disbursements for the compensation and expenses of expert witnesses in excess of the statutory witness fee is reversed and remanded for retaxation in accordance with SDCL 19–5–1.

## NOTICE OF REVIEW

In view of our decision to affirm the jury's verdict, we do not reach the questions concerning ultrahazardous activity and *res ipsa loquitur* raised by the notice of review.

HENDERSON, Acting C.J., and SABERS and AMUNDSON, JJ., and FITZGERALD, Circuit Judge, concur.

GORS, Circuit Judge, for MILLER, C.J., disqualified.

FITZGERALD, Circuit Judge, for WUEST, J., disqualified.