1999 SD 131

**Brad ATKINS and Lori Atkins,
Plaintiffs and Appellees,**

v.

**Robert STRATMEYER and Marilyn
Stratmeyer, Defendants and
Appellants.**

**Nos. 20677, 20694.**

Supreme Court of South Dakota.

Considered on Briefs June 1, 1999.

Decided Sept. 29, 1999.

 

Thomas J. Johnson, Sioux Falls, Mark V. Meierhenry of Danforth, Meierhenry & Meierhenry, Sioux Falls, for plaintiffs and appellees.

William P. Fuller and Melanie Carpenter of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, for defendants and appellants.

DOBBERPUHL, Circuit Judge.

[¶ 1.] This is an appeal from a jury verdict in favor of Brad and Lori Atkins (Atkins) stemming from an automobile accident in which Brad Atkins struck three horses belonging to Robert and Marilyn Stratmeyer (Stratmeyers). The jury found Stratmeyers negligent in not preventing their horses from being on the road and granted Atkins a monetary award for injuries and damages sustained in the collision. Stratmeyers appealed and Atkins filed a notice of review. We affirm in part and reverse and remand for award of costs.

### FACTS

[¶ 2.] Brad Atkins was driving to work around 3:10 a.m. on November 23, 1994, on South Dakota State Highway 17 near Lennox, South Dakota. He collided with three horses which were on the road and belonged to Stratmeyers. Atkins' vehicle rolled into the ditch and he sustained physical injuries. Atkins' total damages, including medical, lost wages, and property damage, was about $76,000. The jury found in favor of Atkins and awarded Atkins damages of $100,000 and his wife Lori $1,000 for loss of consortium.

[¶ 3.] The fenced-in enclosure in which the horses were kept was adjacent to the accident site. It was not conclusively established as to how the horses escaped from the enclosure and onto the road. No fences were damaged or broken, no horse hair was found on the tops of fences to show the horses jumped over, and Stratmeyers said that upon their examination the next morning they found all the gates

closed. Testimony by horse experts from both parties showed the most likely way the horses ended up on the road was through a gate which was left open.[1] It is undisputed that the last person to check the gates before the accident was either Stratmeyer.

[¶ 4.] As will be detailed in the pertinent discussion below, at several points before, during and after trial, Stratmeyers made various objections and moved for directed verdict, mistrial, new trial, and judgment notwithstanding the verdict. The trial court's rulings on these motions led Stratmeyers to appeal and raise the following issues:

Whether a mistrial or new trial was required due to mention of Atkins' insurance and financial condition during the jury trial.

Whether the jury was precluded from finding Brad Atkins contributory negligent due to (1) allowing a highway patrol officer to testify that the vehicle was traveling the speed limit and (2) refusing to instruct the jury regarding over-driving the conditions.

Whether the trial court erred in instructing the jury to consider evidence, testimony and argument concerning the high volume of traffic on the highway where the accident occurred.

Whether the evidence at trial supported the jury's verdict of negligence on the part of Stratmeyers.

[¶ 5.] Atkins filed a notice of review and raises several issues regarding jury instructions concerning a livestock owner's duty of care which they want given if the case is remanded. Atkins also present one issue having to do with costs which were not awarded to them:

Whether the trial court erred in refusing to grant Atkins the costs of: (1) costs in obtaining impairment ratings from a physician; (2) all copies made by plain-

tiffs in the process of prosecuting this matter without itemizing the use of each photocopy; and (3) the costs of retaining a private investigator for investigating service in producing and finding evidence necessary to try the case.

## STANDARD OF REVIEW

[¶ 6.] "Evidentiary rulings will not be disturbed unless there is a clear showing of an abuse of discretion." *Zens v. Harrison*, 538 N.W.2d 794, 795 (S.D.1995)(citing *State v. Hanson*, 456 N.W.2d 135, 138 (S.D.1990); *State v. Olesen*, 443 N.W.2d 8, 9 (S.D.1989); *State v. Bawdon*, 386 N.W.2d 484, 486 (S.D.1986)).

[¶ 7.] We also review a trial court's grant or denial of new trial under the abuse of discretion standard:

It is a well-established rule in South Dakota that a trial court has broad discretion to grant a new trial on the ground of insufficient evidence. *Lewis v. Storms*, 290 N.W.2d 494, 497 (S.D. 1980). Nevertheless, a jury's verdict should not be set aside "except in extreme cases where it is the result of passion or prejudice or the jury has palpably mistaken the rules of law...." *Stoltz v. Stonecypher*, 336 N.W.2d 654, 657 (S.D. 1983)(citing *Simons v. Kidd*, 73 S.D. 306, 42 N.W.2d 307, 309 (1950)). A verdict should only be set aside if the jury's conclusion was unreasonable and a clear illustration of its failure to impartially apply "the reasoning faculty on the facts before them." *Lewis*, 290 N.W.2d at 497 (quoting *Drew v. Lawrence*, 37 S.D. 620, 623, 159 N.W. 274, 277 (1916)).

*LDL Cattle Co., Inc. v. Guetter*, 1996 SD 22, ¶ 13, 544 N.W.2d 523, 526–27.

The trial court is best able to judge whether a verdict is the product of passion and prejudice, and the Supreme Court will not disturb its decision except

---

1. Horse expert witness included Rod Curtis, Jeff Goeman, Dr. Larry Insley, and Dr. Steve Tornberg.

for clear abuse. *Stene v. Hillgren*, 77 S.D. 165, 88 N.W.2d 109 (1958).

. . .

An application for a new trial is addressed to the sound discretion of the trial court and the grant or denial will not be overturned absent a showing of abuse of discretion. *Lewis v. Storms*, 290 N.W.2d 494 (S.D.1980); *Jensen v. Miller*, 80 S.D. 384, 124 N.W.2d 394 (1963). Orders granting new trials stand on firmer ground than orders denying them. *Id.*; *Gould v. Mans*, 82 S.D. 574, 152 N.W.2d 92 (1967).

*Simmons v. City of Sioux Falls*, 374 N.W.2d 631, 632 (S.D.1985).

 [¶ 8.] Regarding a judgment NOV (notwithstanding the verdict), we have said:

A motion for judgment [notwithstanding the verdict] is based on and relates back to a directed verdict motion made at the close of all the evidence. [SDCL 15–6–50(b)] Thus, the grounds asserted in support of the directed verdict motion are brought before the trial court for a second review. We review the testimony and evidence in a light most favorable to the verdict or the nonmoving party, . . . then without weighing the evidence we must decide if there is evidence which would have supported or did support a verdict. (citations omitted).

*Schuldies v. Millar*, 1996 SD 120, ¶ 8, 555 N.W.2d 90, 94–95 (quoting *Bauman v. Auch*, 539 N.W.2d 320, 325 (S.D.1995)); *see also State v. DeNoyer*, 541 N.W.2d 725, 733 (S.D.1995); *Bridge v. Karl's, Inc.*, 538 N.W.2d 521, 523 (S.D.1995).

2. Pretrial order filed January 23, 1998:

It is hereby ordered that plaintiff's motion in limine . . . so far as it concerns any mention of insurance is hereby granted and the court notes that the defense joined orally in that portion of the motion intended to limit the mention of insurance.

3. The trial court stated:

Although the issue of damages comes up, it is in the issue of damages. There's no way to address the issue of damages, in the

## DECISION

**[¶ 9.] Whether Atkins' insurance and financial condition were improperly mentioned during jury trial.**

 [¶ 10.] In Brad Atkins' testimony during trial in front of the jury, the subject of insurance was mentioned:

Question: And did you have to borrow any money to just—did you receive any pay while you were sick?

Answer: No. My dad's company was smaller at that time. We didn't offer insurance and I didn't qualify for Workman's Comp, so I had to borrow three thousand dollars from my father.

Stratmeyers claim that this exchange improperly introduced insurance to the jury and left the jury with the impression that Atkins did not have applicable health insurance, which in actuality he did possess. Stratmeyers also claim that Atkins improperly mentioned damages in closing arguments:

Atkins' Counsel: Let's talk about damages for a moment. There's really no dispute at all that the Atkins suffered $70,693.57 in damages. They spent that for the car that was destroyed, the medical expenses, the lost work. That's a goodly sum of money for somebody else's enjoyment. So there's no quarrel with that.

[¶ 11.] The trial court had issued a pretrial order prohibiting the mentioning of insurance[2], but said it was allowable for Atkins to talk about damages.[3] Stratmey-

court's opinion, without addressing that there are expenses incurred by the plaintiff, and we cannot talk about how they're covered or going to be covered. But if your argument were to hold up Mr. Fuller (Stratmeyer's counsel), the plaintiff couldn't even raise the issue of damages, because he knows that there might be coverage by a medical provider under his medical insurance, under his coverage from another firm, because there wouldn't be damages, so [Stratmeyer's motion for mistrial] is denied.

ers moved for mistrial after both the above incidents. The trial court denied the motions. After judgment was entered, Stratmeyers moved for a new trial based on the alleged improper injection of insurance. Again, the trial court denied the motion. The trial court offered Stratmeyers a limiting instruction after insurance was mentioned but Stratmeyers declined.[4]

[¶ 12.] The rule prohibiting the introduction of insurance is found in SDCL 19–12–13:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This section does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

"This rule evolved as a way to protect defendants from the possibility that a jury may be influenced in its findings of liability or damages by the mention of insurance." *LDL Cattle Co., Inc. v. Guetter*, 1996 SD 22 at ¶ 27, 544 N.W.2d at 528–529 (citing *Lowe v. Steele Const. Co.*, 368 N.W.2d 610, 613 (S.D.1985)). What was mentioned in this case was Atkins' health insurance, not Stratmeyers' liability insurance, which is not prohibited by the statute.

[¶ 13.] Nevertheless, Stratmeyers insist that the above statements to the jury were in violation of the trial court's orders and resulted in prejudice to the Stratmeyers, thus requiring a new trial. Similar to the applicable statute, South Dakota case law on this issue involves the mention of defendant's liability insurance, not the mention of plaintiff's health insurance. *See, e.g., LDL Cattle Co., Inc. v. Guetter*, 1996 SD 22 at ¶ 27, 544 N.W.2d at 528–29; *Arbach v. Gruba*, 89 S.D. 322, 327, 232 N.W.2d 842, 845 (S.D.1975). Even the mere mention of the presence of liability insurance is not always grounds for immediate mistrial. *Lowe v. Steele Const. Co.*, 368 N.W.2d at 613. "Though evidence of liability insurance is generally inadmissible on the issue of negligence, SDCL 19–12–13, certain questions concerning liability insurance were allowed in voir dire to determine potential juror bias or prejudice." *Schuetzle v. Nash–Finch Co.*, 72 S.D. 588, 594, 38 N.W.2d 137, 140 (1949)(modified on other grounds, *Hoffman v. Royer*, 359 N.W.2d 387, 391 (S.D.1984)). "Statements of witnesses implying that the defendant carried liability insurance, not responsive to questions asked but in the nature of voluntary statements that could not have been anticipated, are not deemed to be reversible error if they are excluded from consideration by the jury under proper instructions of the court." *Schuetzle*, 72 S.D. at 594, 38 N.W.2d at 140.

[¶ 14.] Even if these statements could be considered error, it is harmless error.[5] The trial court found, and

---

4. The in-chambers discussion was as follows:

> Trial Court: In this particular case, I am going to find that it does not reach the level for mistrial. I think it was inappropriate for the manner in which this came in and that it is referenced. I'll, at Defendants' request by counsel, admonish the jury that such evidence is not to be considered by them, both verbally, when we go back into the court at this time, and through an instruction. That is a choice I'll leave to defense counsel, if they wish me to do that. Sometimes that more than re-emphasizes their particular position in this matter and may cause additional prejudice, but it would have to be at defendant counsel's request.

> Stratmeyers' Counsel: Either way we go on that, is not a good way to go.
> Trial Court: Think about it for a minute, counsel, and let me know whether you want to, and we'll put that on the record.
> (pause)
> Stratmeyers' Counsel: I've thought about it and we'll not request a cautionary instruction at this time, Your Honor.

5. Our rule on harmless error is found in SDCL 15–6–61:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating,

we agree, that Stratmeyers did not suffer any prejudice as a result of Atkins' minimal reference to insurance and financial condition. We decline to extend the law to prohibit every single mention of financial status or insurance in cases such as this where it is vital to establish the amount of damages. The trial court is affirmed on this issue.

[¶ 15.] **Whether the jury was precluded from finding Brad Atkins' contributory negligent due to (1) allowing a highway patrol officer to testify that the vehicle was traveling the speed limit and (2) refusing to instruct the jury regarding over-driving the conditions.**

[¶ 16.] The investigating officer testified at trial that he believed Atkins' vehicle was traveling the speed limit of 55 mph shortly before and at the time of impact. Stratmeyers claim that the officer had no foundation for his opinion and he was not qualified as an expert to render an opinion of the probable speed of the vehicle. Part of the testimony was as follows:

Question: At that time, is one of your duties to estimate the speed at which the collision took place?

Answer: Yes.

Question: What did you estimate the speed to be on that night?

. . .

Answer: . . . I saw no indication of excessive speed at the location, no braking marks, so I used my judgment and went with the posted legal speed limit, fifty-five.

. . .

Question: And isn't it a fact that in those situations where you don't have any data to actually arrive at a speed calculation, it's your practice to give the driver the benefit of the doubt and just put in the speed limit, the prevailing speed limit at that time?

Answer: With no evidence, no skids, and nothing to indicate an excessive speed, that was my decision that night to go with the posted speed limit, yes.

[¶ 17.] "[A] lay witness may give an opinion if he has personal knowledge of the matter." *Gerlach v. Ethan Coop Lumber Ass'n.*, 478 N.W.2d 828, 831 (S.D.1991)(citing *State v. Bittner*, 359 N.W.2d 121 (S.D. 1984); SDCL 19–15–1; SDCL 19–14–2). "Nonexpert testimony . . . requires no foundation and . . . a nonexpert may testify regarding his or her opinions or inferences which are based on perceptions and which facilitate a clear understanding of the testimony or the determination of a fact in issue." *State v. No Heart*, 353 N.W.2d 43, 48 (S.D.1984); *United States Fire Ins. Co. v. Dace*, 305 N.W.2d 50, 56 (S.D.1981).

[¶ 18.] "The weight and credibility of the officer's opinion was for the jury to determine." *State v. No Heart*, 353 N.W.2d at 48. Here, the jury was free to place whatever weight on the officer's opinion it felt was warranted by the situation. The officer was never offered nor qualified as an expert and his testimony made clear the limitations of his opinion. It was not err to allow the officer to testify as he did.

[¶ 19.] The second part of this issue involves the trial court's refusal to instruct the jury on over-driving the road conditions. This stems from the Stratmeyer's assertion that there was fog the morning of the accident and that even if Atkins was going the speed limit, he was still over-driving the conditions and thus he was contributory negligent. Only one witness, Jay Lundt, who was driving around the same time and location as the accident, said there was fog that morning and that it was lifting shortly after the accident. No one else, including Atkins, the medical and emergency personnel, or the investigating

modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

office recall the presence of fog that morning.

[¶ 20.] Despite the lack of evidence showing fog that morning, the trial court erred in not giving the jury instruction on over-driving the conditions. It was up to the jury to decide the credibility of the one witness who recalled fog and whether Atkins was contributory negligent in light of such evidence. However, Stratmeyers must establish that such error prejudiced them by showing "the jury probably would have reached a different verdict, one more favorable to him, had correct instructions been given." *LDL Cattle Co., Inc. v. Guetter*, 1996 SD 22 at ¶ 35, 544 N.W.2d at 530. Due to the lack of overwhelming evidence establishing the presence of fog, we believe the jury would not have reached a different conclusion had they received the instruction. Thus, the error was harmless. The trial court is affirmed on this issue.

[¶ 21.] **Whether the trial court erred in instructing the jury to consider evidence, testimony and argument concerning the high volume of traffic on the highway where the accident occurred.**

[¶ 22.] Stratmeyers claim that the trial court's instructions to the jury that they should consider the character of the highway in determining the standard of care owed by the horse owners was erroneous and not the correct law in South Dakota. The Stratmeyers are mistaken in this assertion.

[¶ 23.] Landowners have a duty of ordinary care regarding their roaming animals:

At common law an owner of a domestic animal is under no legal obligation to restrain it from being at large on the highway unattended, and he is not liable for damages for an injury resulting from its being so at large unless he has knowledge of vicious propensities of the animal or unless he should *reasonably have anticipated that injury would result from its being so at large on the highway.*

*Eixenberger v. Belle Fourche Livestock Exchange*, 75 S.D. 1, 5, 58 N.W.2d 235, 237 (1953)(emphasis original); *see also, Pexa v. Clark*, 85 S.D. 37, 40, 176 N.W.2d 497, 499 (1970)(adopting the above standard in a case involving animals in a fenced lot, specifically mentioning the "busy highway" adjacent to the enclosure). This Court has said that in the absence of a specific statute, this rule governs the responsibility of livestock owners. *Hitzel v. Clark*, 334 N.W.2d 37, 39 (S.D.1983).

Thus, we look to the facts of each case and consider "[t]he character of the road, the kind of traffic thereon, the time of day, and all other pertinent facts and the surrounding conditions" to determine whether the defendant should have reasonably anticipated the danger.

*Estate of Shuck v. Perkins County*, 1998 SD 32, ¶ 12, 577 N.W.2d 584, 587 (quoting *Eixenberger*, 75 S.D. at 6, 58 N.W.2d at 238). Whether the owner could have anticipated that the animals would stray onto the highway is a question of fact for the jury. *Eixenberger*, 75 S.D. 1, 58 N.W.2d 235. Here, it appears the jury considered these factors and found that Stratmeyers should have anticipated the horses' escape would cause injury.

[¶ 24.] Stratmeyers would like to twist the law, specifically *Zeeb v. Handel*, 401 N.W.2d 536 (S.D.1987), into saying that the busy traffic on the highway should not be a factor. *Zeeb* looked at whether the owner should have anticipated that the animals might escape, but did not mention the factors the jury should consider in making that determination, such as the highway characteristics. *Zeeb* did not need to go into those factors since the animals in that case had a history of escaping. Stratmeyers' argument on this point is not persuasive. The trial court is affirmed on this issue.

[¶ 25.] **Whether the evidence at trial supported the jury's verdict of negligence on the part of Stratmeyers.**

[¶ 26.] Stratmeyers moved for judgment notwithstanding the verdict under SDCL 15–6–50(b)[6] and moved for a new trial based on insufficiency of the evidence under SDCL 15–6–59(a)(6).[7] Both motions were denied by the trial court.

[¶ 27.] A reiteration of the standard here is beneficial: "[A] jury's verdict should not be set aside 'except in extreme cases where it is the result of passion or prejudice or the jury has palpably mistaken the rules of law.'" *LDL Cattle Co., Inc. v. Guetter*, 1996 SD 22 at ¶ 13, 544 N.W.2d at 526–527 (quoting *Stoltz v. Stonecypher*, 336 N.W.2d 654, 657 (S.D.1983)); *Simons v. Kidd*, 73 S.D. 306, 42 N.W.2d 307, 309 (1950). "A verdict should only be set aside if the jury's conclusion was unreasonable and a clear illustration of its failure to impartially apply 'the reasoning faculty on the facts before them.'" *Id.* (citing *Lewis*

*v. Storms*, 290 N.W.2d 494, 497 (S.D.1980); *Drew v. Lawrence*, 37 S.D. 620, 623, 159 N.W. 274, 277 (1916)).

[¶ 28.] Stratmeyers argue that the trial court should have entered a judgment notwithstanding the verdict or granted a new trial because the evidence did not support the jury's verdict. They claim the evidence showed that Stratmeyers did not act negligently.

[¶ 29.] Despite Stratmeyers' claim to the contrary, there was evidence to support the jury verdict. Testimony at trial showed the most probable manner in which the horses escaped from the fenced enclosure was through an open gate. Stratmeyers admit that they were the last ones to check the gates, so the logical and obvious conclusion which the jury reached was that Stratmeyers negligently left a

6. SDCL 15–6–50(b), in pertinent part:

Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than ten days after notice of entry of judgment, a party who has moved for a directed verdict may serve and file a motion to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within ten days after the jury has been discharged, may serve and file a motion for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

7. SDCL 15–6–59(a) states the grounds for granting a new trial:

A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

(1) Irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;

(2) Misconduct of the jury; and whenever any one or more of the jurors have been induced to assent to any general or special verdict or to a finding on any question submitted to them by the court, by a resort to the determination of chance, such misconduct may be proved by the affidavit of any one of the jurors;

(3) Accident or surprise which ordinary prudence could not have guarded against;

(4) Newly discovered evidence, material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial;

(5) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;

(6) Insufficiency of the evidence to justify the verdict or other decision or that it is against law;

(7) Error of law occurring at the trial; provided, that in the case of claim of error, admission, rejection of evidence, or instructions to the jury or failure of the court to make a finding or conclusion upon a material issue which had not been proposed or requested, it must be based upon an objection, offer of proof or a motion to strike.

gate open. The trial court is affirmed on this issue.

**[¶ 30.] Whether Atkins should have received: (1) costs in obtaining impairment ratings from a physician; (2) cost of all copies made by plaintiffs in the process of prosecuting this matter without itemizing the use of each photocopy; and (3) the costs of retaining a private investigator for investigating service in producing and finding evidence necessary to try the case.**

[¶ 31.] The statute which allows recovery of costs is SDCL 15–17–37:

> The prevailing party in a civil action or special proceeding may recover expenditures necessarily incurred in gathering and procuring evidence or bringing the matter to trial. Such expenditures include costs of telephonic hearings, costs of telephoto or fax charges, fees of witnesses, interpreters, translators, officers, printers, service of process, filing, expenses from telephone calls, copying, costs of original and copies of transcripts and reporter's attendance fees, court appointed experts and other similar expenses and charges. These expenditures are termed disbursements and are taxed pursuant to § 15–6–54(d).

The trial court has the discretion to award distributions. *High Plains Genetics Research v. J K Mill–Iron Ranch*, 535 N.W.2d 839, 846 (S.D.1995).

[¶ 32.] We have previously held that photocopies are covered under the statute, if they can be proved. *Schuldies v. Millar*, 1996 SD 120 at ¶ 35, 555 N.W.2d at 100. As Atkins provided a report with a specific amount expended for in-office photocopies, the trial court should have awarded Atkins such fees.

[¶ 33.] We have not previously addressed awarding costs for investigation fees and impairment ratings. In *Nelson v. Nelson Cattle Co.*, 513 N.W.2d 900 (S.D. 1994), this Court had the opportunity to expand SDCL 15–17–37 to allow recovery of expert witness fees beyond the statutorily mandated "court appointed experts." But this Court chose to follow the statutory language word for word "in the absence of some clear reference to expert witness fees being treated different from statutory witness fees." *Id.* at 907. We again decline to expand the statutory language and hold that investigation fees and impairment ratings are not recoverable costs under SDCL 15–17–37.

[¶ 34.] The trial court is affirmed except as to its denial of costs for Atkins' photocopies. The matter is remanded to the trial court for an order awarding those costs in accord with this decision.

[¶ 35.] MILLER, Chief Justice, concurs.

[¶ 36.] KONENKAMP and GILBERTSON, Justices, concur in result.

[¶ 37.] AMUNDSON, Justice, dissents.

[¶ 38.] DOBBERPUHL, Circuit Judge, for SABERS, Justice, disqualified.

KONENKAMP, Justice (concurring in result).

[¶ 39.] I cannot agree with the majority that it was permissible to allow the highway patrol officer to testify that Brad Atkins was travelling fifty-five miles per hour at the time of the accident. The opinion lacked any foundation. The officer took no measurements and made no examination of the damage to ascertain speed at impact. Not having data to make a speed calculation, the officer nonetheless told the jury that he used his "judgment and went with the posted legal speed limit, fifty-five." He was neither qualified as an expert witness nor called as one. Contrary to the majority's characterization, this was not lay witness opinion testimony.

[¶ 40.] Lay witness opinions are defined in SDCL 19–15–1 (Rule 701):

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are

(1) rationally based on the perception of the witness and

(2) helpful to a clear understanding of his testimony or the determination of a fact in issue.

Generally, this rule has been construed to allow two types of lay opinions: (1) collective fact opinions, and (2) skilled lay observer opinions. Edward J. Imwinkelried, Evidentiary Foundations 279 (4th ed. 1998). A collective fact opinion is the expression of an inference lay people commonly draw. *Id.* at 280. Unable to articulate all the sensory data supporting a logical inference, the rule allows opinions on subjects such as height, distance, speed, color, and identity. *Id.* Lay witnesses must have personal knowledge of the data supporting their opinions. *State v. Bittner*, 359 N.W.2d 121, 126 (S.D.1984) (Rule 701 is qualified by SDCL 19–14–2 (Rule 602) requiring witnesses to have "personal knowledge"). The officer did not observe Atkins driving his vehicle or striking the horses. Thus, he had no personal knowledge as a basis for giving a lay opinion.

[¶ 41.] In the second category, which is not applicable here, courts allow skilled lay observer opinions about a person's voice, handwriting, or sanity. *Id.* See *State v. Loftus*, 1997 SD 131, ¶ 32, 573 N.W.2d 167, 175–76 (Konenkamp, J., concurring) (familiarity with handwriting and the relationship or circumstances forming that familiarity must be described for the lay person's testimony to be admitted). These opinions are only admissible if lay witnesses are repeatedly and personally exposed to the characteristics of those whom they are giving an opinion about. *Imwinkelried, supra,* at 281.

[¶ 42.] It was error, therefore, to admit the officer's speed estimate. Nonetheless, the error was harmless, as the jury had considerable other evidence with which to judge whether Atkins was contributorily negligent. Furthermore, the jury could easily conclude from the officer's testimo-ny that his opinion was really more of a hunch.

[¶ 43.] Lastly, I concur in result on the first issue. It was harmless error to allow the testimony about not having insurance. But I do not think our opinion should be read as encouraging this kind of testimony. In other circumstances, it may well be not only irrelevant, but unduly prejudicial as well.

[¶ 44.] GILBERTSON, Justice, joins this special writing.

AMUNDSON, Justice (dissenting).

[¶ 45.] A review of this record shows that the following errors polluted this proceeding so that a reversal is necessary.

[¶ 46.] **1. Whether a mistrial or new trial was required due to the fact that the Atkins improperly injected the issues of insurance and their financial condition into the trial.**

[¶ 47.] In the present case, plaintiff's counsel asked the plaintiff (Atkins) "Did you have to borrow any money to just – did you receive any pay while you were sick?" In response, Atkins stated "[n]o. My dad's company was smaller at that time. We didn't offer insurance and I didn't qualify for Workman's [sic] Comp, so I had to borrow three thousand dollars from my father." Atkins claims that Stratmeyer's insurance coverage was not mentioned; therefore, it was not prejudicial to Stratmeyer's case.

[¶ 48.] On the contrary, mentioning that Atkins did not have insurance or workmen's compensation coverage was prejudicial, because it has the possibility of influencing the jury on the amount of damages Atkins suffered. The fact that Stratmeyer's insurance was not mentioned is irrelevant. In *Kloppenburg v. Kloppenburg*, 66 S.D. 174, 176–77, 280 N.W. 209, 210 (1938), this Court reviewed statements made by the plaintiff about defendant's insurance coverage and held:

The remarks complained of by defendant's counsel are not based on any of

the issues in the case. Therefore, they are not proper matter to go to the jury. The purpose of the trial is to ascertain the extent of plaintiff's injuries and the amount that will reasonably compensate her for such injuries. The fact that there is an insurance company that has bound itself by a policy of insurance to indemnify the defendant to the extent of any judgment that may be recovered against him [or borrowing of funds from a father] *does not prove or tend to prove any of the issues in the case.* (emphasis added.)

[¶ 49.] The question by Atkins about "did you have to borrow money" has no relevancy in proving the issue of Stratmeyer's negligence. Further, Atkins' comment concerning his reason for borrowing money is also irrelevant. In *LDL Cattle Co., Inc., v. Guetter,* 1996 SD 22, 544 N.W.2d 523, this Court held that because the party "failed to show the relevance of the introduction of insurance coverage as to a material issue in the case," it was not error for the court to deny its presentment to the jury. 1996 SD 22, ¶ 29, 544 N.W.2d at 529. Similarly, there has been no reason presented by Atkins why the borrowing of funds is relevant to the issue of negligence of Stratmeyer. The allowance of such statement was prejudicial because it was not offered to prove any element of the case and could only have been inserted to generate sympathy. I would hold that the trial court erred in not granting the motion for mistrial.

[¶ 50.] **2. Whether the circuit court precluded the jury from finding Brad Atkins contributorily negligent by (1) allowing a highway patrol officer to testify, without foundation, that the vehicle was traveling the speed limit and (2) refusing to instruct the jury regarding over-driving the conditions.**

*a. Allowing a highway patrol officer to testify, without foundation, that the vehicle was traveling the speed limit.*

[¶ 51.] We have often noted our preference for eyewitness testimony, but eyewitness testimony does not preclude the additional use of expert testimony. *Buckley v. Fredericks,* 291 N.W.2d 770, 771 (S.D.1980) (citations omitted). Under SDCL 19–15–2:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

[¶ 52.] In this case, Trooper Blomker, who investigated the accident, testified as follows:

Q: (Mr. Fuller) And isn't it a fact that in those situations where you don't have any data to actually arrive at a speed calculation, it's your practice to give the driver the benefit of the doubt and just put in the speed limit, the prevailing speed limit at that time?

A: (Trooper Blomker) With no evidence, no skids, and nothing to indicate an excessive speed, that was my decision that night to go with the posted speed limit, yes.

Q: And you would agree, Trooper, that it could have easily been fifty-eight or sixty miles an hour as well as fifty miles an hour, based upon all of the stuff on the road?

A: It's possible, yes.

His basis for testifying to the speed was that he gave the driver the benefit of the doubt of the posted speed limit.

[¶ 53.] Atkins' counsel claims that the testimony of Blomker was only that of an initial investigator, not as an expert witness, such as an accident reconstructionist. Additionally, Atkins claims that he is a nonexpert who is allowed to give opinions as to speed. With this position, we do not agree.

[¶ 54.] Police officers are inherently looked upon as experts when testifying

about police matters. *See State v. Edmundson*, 379 N.W.2d 835, 839 (S.D.1985) (holding that "the officer's knowledge, skill, training, education and experience with past DWI arrests, was sufficient to qualify his opinion that Edmundson was intoxicated."). Usually, the police officer testifies wearing his uniform, which depicts and reminds the jurors that the person testifying is a person with authority and experience in the matters to which he is testifying. To be admissible, the expert's opinion must have foundation. *See Edmundson*, 379 N.W.2d at 840 (finding "sufficient foundation was laid to qualify the officer's opinion that Edmundson was intoxicated."). To support the foundation of the expert's opinion, he must base his opinion on factual data. *See Buckley*, 291 N.W.2d at 772 (noting that the only question remaining was "whether there was sufficient factual data to support Dr. Nelson's opinion"). Here, Trooper Blomker did not base his opinion on any factual data; instead, he gave the driver the benefit of the doubt by stating he was driving the posted speed limit. Such testimony lacks foundation for its admission and it was error for the trial court to allow its admission at trial.

### b. Refusal to instruct the jury regarding over-driving the conditions.

[¶ 55.] Our standard of review for a trial court's refusal to give a requested jury instruction is as follows:

> On issues supported by competent evidence in the record, the trial court should instruct the jury. The trial court is not required to instruct on issues lacking support in the record. Failure to give a requested instruction that correctly sets forth the law is prejudicial error. Jury instructions are reviewed

as a whole and are sufficient if they correctly state the law and inform the jury. Error is not reversible unless it is prejudicial. The burden of demonstrating prejudice in failure to give a proposed instruction is on the party contending the error.

*State v. Shadbolt*, 1999 SD 15, ¶ 9, 590 N.W.2d 231, 232–33 (citing *Sundt Corp. v. State Dep't of Transp.*, 1997 SD 91, ¶ 19, 566 N.W.2d 476, 480 (quoting *Kuper v. Lincoln–Union Elec. Co.*, 1996 SD 145, ¶ 32, 557 N.W.2d 748, 758 (internal citations omitted))). We have often stated that " '[a] trial court must present only those instructions to the jury which are supported by competent evidence and set forth the applicable law.' " *Sundt*, 1997 SD 91, ¶ 22, 566 N.W.2d at 481 (quoting *State v. Johnson*, 320 N.W.2d 142, 147 (S.D.1982)).

[¶ 56.] In the present case, Stratmeyer requested a jury instruction to explain to the jury that even if evidence established Atkins was driving the speed limit, he still could be found contributorily negligent based upon over-driving the conditions.[8] Evidence was presented by witness Lundt, who arrived at the scene after the accident, that the conditions were foggy and visibility was impaired. He further testified that he was traveling slower than the posted speed limit and was able to see and avoid the three horses which had been hit by Atkins and were lying in the road. This evidence supported the giving of the requested jury instruction. The jury should have been allowed to decide the credibility of this version of the conditions at the time of the accident. It was reversible error to not give the jury instruction since it was supported by evidence. As to whether the conditions existed were questions for the jury, not the court.

---

8. Stratmeyer's proposed jury instruction on that issue stated:

> A statute in this state provides that it is unlawful for any person to drive a motor vehicle on the highway located in this state at a speed greater than is reasonable and prudent under the conditions then existing, even if the driver is driving within the speed limit.
> This statute sets the standard of care of the ordinary careful and prudent person. If you find Plaintiff violated it, such violation is contributory negligence.

[¶ 57.] This Court has previously stated that "[t]rials are a search for the truth as determined by the jury based upon all evidence" and instructions on applicable law. *Tunender v. Minnaert*, 1997 SD 62, ¶ 28, 563 N.W.2d 849, 855. Further, in *McDonough Power Equip., Inc., v. Greenwood*, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), the United States Supreme Court noted that "[t]his Court has long held that ' "[a litigant] is entitled to a fair trial but not a perfect one," for there are no perfect trials.' " 464 U.S. at 553, 104 S.Ct. at 848, 78 L.Ed.2d at 669 (quoting *Brown v. United States*, 411 U.S. 223, 231–32, 93 S.Ct. 1565, 1570–71, 36 L.Ed.2d 208, 215 (1973)) (quoting *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476, 484 (1968), and *Lutwak v. United States*, 344 U.S. 604, 619–20, 73 S.Ct. 481, 490, 97 L.Ed. 593, 605 (1953)). After reviewing this polluted record, I am convinced that the trial court's rulings inhibited the search for truth and denied Stratmeyer a fair trial.